Katie **CARTER**, on behalf of the household of Thomasena Tindall, Deceased, Barbara C. Ankney, individually and on behalf of her household and on behalf of all others similarly situated, Appellants in No. 72–1239,

v.

Earl L. **BUTZ**, Individually and in his capacity as Secretary of the United States Department of Agriculture, et al., Appellants in No. 72–1288,

and

Helene Wohlgemuth, Secretary of Welfare of the Commonwealth of Pennsylvania, et al.

Nos. 72–1239, 72–1288.

United States Court of Appeals,
Third Circuit.

Argued March 6, 1973.

Decided May 29, 1973.

Michael A. Nemec, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for Katie Carter and others.

Harlington Wood, Jr., Acting Asst. Atty. Gen., Richard L. Thornburgh, U. S. Atty., Alan S. Rosenthal, Michael Kimmel, Attys., Dept. of Justice, Washington, D. C., for the Federal Government.

J. Shane Creamer, Atty. Gen., Barry A. Roth, Marx S. Leopold, Asst. Attys. Gen., Harrisburg, Pa., for Secretary of Welfare and Commonwealth of Pennsylvania.

Before GIBBONS and HUNTER, Circuit Judges, and MUIR, District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

In this action heads of households who were beneficiaries of the federal food stamp program sought relief in the district court against the federal Secretary of Agriculture [1] and the Pennsylvania Welfare Department [2] for the deprivation of food stamps which resulted from administrative errors committed by officials of the Welfare Department. The district court judgment provided that the arrearages in food stamp allotments be cured by a forward adjustment of the amount of purchase discount which would be allowed to each plaintiff in the purchase of future monthly food stamps allotments. The effect of this judgment was to grant full relief to the plaintiffs at the expense of the Federal Government. The plaintiffs sought class action treatment, which the district court declined. Plaintiffs appeal from the adverse class action determination. The federal defendants cross appeal from the judgment imposing the expense of the forward adjustment on the Federal Government rather than on the Commonwealth of Pennsylvania. Neither the federal nor the state defendants contend that it was inappropriate to grant some form of relief, against someone, to the plaintiffs.

Under the Food Stamp Act of 1964 [3] (the Act) and implementing regulations [4] the Food and Nutrition Service of the Department of Agriculture administers a program under which, at the request of the states, low income households within the state are enabled to purchase at a discount from their redeemable value, food stamps which may be used to obtain a nutritionally adequate diet. The amount such householders pay for the food stamps is determined under a sliding scale dependent upon the household's income. Eligibility of certain households, such as welfare recipients [5]

---

1. This court substituted the present Secretary of Agriculture, Earl L. Butz, for the former, Secretary Clifford M. Hardin. Edward J. Hekman, Administrator of the Food and Nutrition Service of the Department of Agriculture and the United States Department of Agriculture were also joined as defendants. Hereinafter the above will be referred to as the federal defendants.

2. Also joined with the Pennsylvania Welfare Department as defendants were Helene Wohlgemuth, Secretary of Welfare of the Commonwealth of Pennsylvania, and Edward Kalberer, Executive Director of the Allegheny County Board of Assistance. Hereinafter the above will be referred to as the state defendants.

3. 78 Stat. 703 (1964), as amended, 84 Stat. 2048 (1971), 7 U.S.C. §§ 2011–2025. *See also* section 411 of the Social Security Amendments of 1972, 86 Stat. 1329, 1491–92, 7 U.S.C. § 2012(e) (Supp.1972), as amended.

4. 7 C.F.R. Pts. 270–274.

5. *See* 7 C.F.R. § 271.3(b).

is determined at the federal level. Eligibility of other households is determined by the states, under uniform national income and resource standards set forth in the Act and federal regulations.[6] Under the Act, state agencies are responsible for certification of qualifying households, and are also responsible for the issuance of food stamps. 7 U.S.C. § 2019(b); 7 C.F.R. § 270.3(b). Instructions of the Food and Nutrition Service permit the state agencies to perform the certification responsibility by mailing to eligible households at a specified time twice each month authorization to purchase cards (ATP cards) which disclose the household's "purchase requirement." The "purchase requirement" is the percentage of the face amount of redeemable value which the householder must pay to the issuing state agency for the stamps. The issuing state agency is usually a commercial bank, which deposits the "purchase requirement" to the credit of the United States Treasury. The food stamps are redeemable for eligible food items at face value at participating retail food stores. The stores collect the face value in money at a bank, which in turn is reimbursed at face value by the Treasury through the Federal Reserve System. Thus, the amount of the discount is borne by the Federal Government. While the Federal Government bears the cost of the discount, with certain limited exceptions the participating states are responsible for financing the costs of carrying out their administrative duties under the Act, including the administrative cost of issuing food stamps to eligible households.[7]

The purpose of the food stamp program is the assurance of a nutritionally adequate diet. This purpose would be defeated by issuing procedures which would tend to place in the hands of eligible householders more food stamps than could be redeemed for food in a relatively short period. To insure that the food stamps will be used by householders for the intended purpose, the ATP cards are issued periodically and are valid only for short intervals; usually no longer than one-half month. If, through an administrative error at the state level, an ATP card does not reach a householder during a given eligibility period, that householder is unable to purchase the stamps available during that interval, and thereby loses his discount for that period. In this case the plaintiffs, eligible householders, did not receive ATP Cards because of a computer breakdown (Tindall) or an incorrect address (Ankney). In both of these cases nonissuance was due solely to an administrative error of the Pennsylvania Department of Public Welfare.

The Food and Nutrition Service has issued instructions which deal with inadvertent termination or reduction of food stamp benefits.[8] Food and Nutrition Service Instruction 734–2 authorizes emergency issuance of ATP cards, in cases where through no fault of their own eligible householders may not have received them, before the next regularly scheduled ATP card issuance. Under section VI–C of this instruction state agencies are authorized to prepare manually replacement cards for those not received at the normal time, thereby permitting an eligible household to participate in the program in the current eligibility period. The participating household must promptly notify the state agency that it has not received its regularly scheduled ATP card since, consistent with the nutritional purposes of the statute, the emergency issuance is permitted only prior to the next scheduled issuance. Appellants in this case, the district court found, did make timely application to the appropriate officials

6. *See* 7 U.S.C. §§ 2014, 2019(e)(1); 7 C.F.R. § 271.3(c).

7. 7 U.S.C. § 2024; 7 C.F.R. §§ 271.1(h), 271.2.

8. Purposeful termination or reduction, under a 1971 amendment to the Act and implementing regulations, requires a fifteen-day notice of adverse action and a fair hearing. Section 10(e)(6), 7 U.S.C. § 2019(e)(6); 7 C.F.R. §§ 271.1(m), 271.1(o); Food and Nutrition Service Instruction 732–14.

of the Pennsylvania Welfare Department, which compounded the administrative foulup in delivery of the ATP cards by failing to make timely emergency issuance.

■ The federal defendants contend that while they have no objection to giving relief to eligible householders who have been deprived of benefits through no fault of their own, the relief should be at the expense of the Commonwealth of Pennsylvania, not at the expense of the United States. They urge that the applicable administrative regulations and instructions establish a thirty-day statute of limitations on federal liability. But because the states are under a general statutory obligation to follow administrative regulations and the instructions of the Federal Nutrition Service,[9] they urge, and in the instant cases failed to do so, the same regulations and instructions provide the predicate for imposing on the states a liability which does not otherwise appear. The state defendants contend that the Act does not authorize a thirty-day statute of limitations, that the regulations in force at the time of the events in issue do not specify such a period, that there are no state appropriations for the payment of benefits to food stamp eligibles, and that im-

position of liability on the Commonwealth is prohibited by its sovereign immunity.

Since both the state and the federal defendants concede that the plaintiffs are entitled to relief from some source [10] we are not concerned with an issue over the statutory right of the recipients. *Cf.* Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The only issue is, as between the federal and state governments, which party should be financially responsible for the remedy implied from conceded statutory eligibility. Under the Act, generally speaking, the Federal Government pays for benefits, 7 U.S.C. §§ 2013(a), 2016(d), while the states pay for a portion of administrative costs. 7 U.S.C. §§ 2019(b), 2024(a). The Commonwealth may be held liable to the Federal Government for gross negligence or fraud on the part of its agencies in the certification of applicant households by the face amount of food stamps issued as a result of such fraud in excess of the household's proper eligibility. 7 U.S.C. § 2019(g). The Secretary has a general rulemaking authority under the Act. 7 U.S.C. § 2014(c). He has issued regu-

---

9. *See* 7 U.S.C. § 2013(c).

10. The federal defendants stated:

  "We do not take the position that the food stamp beneficiaries here involved have no remedy at all. Our position is that, assuming that they did not receive their ATPs, that they in fact made a timely request for reissuance to the State agency, and that the latter failed to implement the emergency procedures, the Food Stamp Act and implementing regulations at least implicitly require that the remedy be provided by the State agency, not the federal government." Brief for the Secretary of Agriculture at 23.

  The state defendants admit that those who qualify have a right to receive the food stamps.

  "II. FOOD STAMP BENEFITS ARE STATUTORY ENTITLEMENT TO THOSE WHO MEET THE STANDARDS OF ELIGIBILITY.

In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) it was determined that welfare benefits are a matter of statutory entitlement for persons qualified to receive them. In the lower court opinion, District Judge Dumbauld indicated at page 7 of his opinion, 'we agree with other courts that have passed upon the issues that the right to receive benefits under the food stamp program is a statutory entitlement.' In the instant case, the entitlement originates in 7 U.S.C. § 2013(a) [(a)]: 'The Secretary is authorized to formulate and administer a food stamp program under which, at the request of the State agency, eligible households within the State shall be provided with an opportunity to obtain a nutritionally adequate diet through the issuance to them of a coupon allotment.'" Brief for Appellee at 6.

lations implementing 7 U.S.C. § 2019(g), which provide for state financial liability to the Federal Government when because of errors by the states, the Federal Government has been charged with coupons which should never have been issued. *See* 7 C.F.R. § 271.7. The aim of 7 U.S.C. § 2019(g) and of 7 C.F.R. § 271.7 is to provide indemnity to the Federal Government for *additional* expense which it has incurred as a result of such errors. In this case no *additional* expense is involved. Indeed if we were to accept the position of the federal defendants the Federal Government would incur reduced rather than additional expense.

The argument in favor of imposing liability on the states for the amount of benefits which must be made available later than the normal eligibility period is that such liability would provide an incentive to the states to police strictly the administration of the food stamp program. Such policing by the states would reenforce the federal purpose of having a limited number of food stamps in the hands of recipients in a given period, and thereby of assuring that they would be used for sound nutritional purposes rather than sold or traded. But neither the Act nor the regulations in effect when plaintiffs were deprived of benefits provide specifically for the imposition of such an incentive-penalty upon the states. Thus we are dealing with the area of judicial implication of appropriate remedies to redress federal statutory rights. *See, e. g.*, Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). When considering whether to construe the Act as permit-

ting the implication of a remedy against the state rather than Federal Government we cannot disregard the fact that Congress has appropriated funds for the payment of the benefits in question, while the states have not. This is not to suggest that it would have been beyond the power of Congress to require as a condition of the states' participation in the program a waiver of sovereign immunity to the extent of retroactive benefits. *See* King v. Smith, *supra*; *compare* Jordan v. Weaver, 472 F.2d 985, 993–994 (7th Cir. 1973) *with* Rothstein v. Wyman, 467 F.2d 226, 238 (2d Cir. 1972). But nothing in the Act suggests any such congressional intention. *See* Employees of the Department of Public Health & Welfare, State of Missouri v. Department of Public Health & Welfare, State of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).[11]

Moreover, the remedy fashioned by the district court, forward adjustment of the price of food stamps to the deprived recipients, is consistent with the federal nutritional purposes. Presumably the plaintiff householders spent money for food in lieu of stamps in the period during which they did not receive their ATP cards. They are not, under the judgment of the court, being given additional stamps beyond their normal needs, which might find their way into nonnutritional uses. They are merely being given an opportunity to make up the cash discount of which they were deprived. That remedy seems to us entirely consistent with both the purposes and the language of the Act. An instruction of the Federal Nutritional Service, FNS Instruction 732–14 IV–D, prohibits retroactive food stamp adjustments in favor of food stamp recipients who, in fair hearings on reduction or ter-

11. The argument for imposing liability on the Commonwealth would be that in allowing the thirty-day period for the issuance of ATP cards to elapse, the Commonwealth breached a duty to the recipients and would be liable to them on a negligence theory. We find no indication in the legislation that Congress intended to vest in the administrator the power to create by rule such a cause of action against a sovereign state.

mination of benefits, have prevailed. The Instruction states:

> "Past food consumption cannot be increased or otherwise altered. Therefore, following the hearing decision, retroactive adjustments in favor of the household shall not be permitted."

The Federal Nutritional Services recognizes, however, that some adjustment is appropriate, for the same instruction was amended on August 28, 1972 to provide:

> "This prohibition should not be construed to limit State Agencies in any way from issuing retroactive benefits to households from state monies." Instruction V–D.

Forward adjustment rather than retroactive payment of benefits from any source, state or federal, is more consistent with the federal purpose of assuring current use of the stamps for nutritional purposes. Those courts, in addition to the district court in this case, which have considered the matter have concluded as much. Stewart v. Butz, 356 F.Supp. 1345 (W.D.Ky.1973); Bermudez v. United States Department of Agriculture, 348 F.Supp. 1279 (D.D.C.1972), appeal pending, No. 72–2138 (D.C.Cir.); Russo v. Kirby, 335 F.Supp. 122 (E.D.N.Y.1971).

There remains for consideration the adverse class action determination. In quite similar circumstances other district courts have concluded that the action should be maintained as a class action pursuant to Fed.R.Civ.P. 23(b)(2). *See* Stewart v. Butz, *supra*; Bermudez v. United States Department of Agriculture, *supra*; Russo v. Kirby, *supra*. In this case the district court concluded that the disparate factual circumstances of class members, especially differences in the amount of discount for which they were eligible, made a class action undesirable. The court also concluded that the precedential value of its decision would render a judgment in favor of the class unnecessary. While we might well have decided otherwise we conclude that the class action determination was with-

in the range of discretion permitted by Rule 23.

The judgment of the district court will be affirmed. Each party to bear its own costs.