Mercedes Ortiz **BERMUDEZ** et al.

v.

The **UNITED STATES DEPARTMENT OF AGRICULTURE,**
and
**Earl L. Butz,** Individually and in his capacity as Secretary of the United States Department of Agriculture, et al., Appellants.

No. 72-2138.

United States Court of Appeals, District of Columbia Circuit.

Feb. 26, 1973.

Argued Feb. 26, 1973.

Decided Oct. 10, 1973.

Michael Kimmel, Atty., Dept. of Justice, with whom Harold H. Titus, Jr., U. S. Atty. and Walter H. Fleischer, Atty., Dept. of Justice, were on the brief, for appellants. John A. Terry and Robert M. Werdig, Jr., Asst. U. S. Attys., also entered appearances for appellant.

Ronald F. Pollack, New York City, with whom Roger A. Schwartz, New York City, and John R. Kramer, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, MacKINNON, Circuit Judge, and VAN PELT,* Senior United States District Judge for the District of Nebraska.

VAN PELT, Senior District Judge:

This is an action brought by welfare recipients to adjudicate their

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

rights under The Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011 et seq. (1970). The defendants are the United States Department of Agriculture, the Secretary of the United States Department of Agriculture, the Administrator of the Agriculture Department's Food and Nutrition Service, and the Food Stamp Division Director of the Agriculture Department's Food and Nutrition Service. The plaintiffs are welfare recipients in New York and Connecticut who, through State administrative error, have been denied participation for varying periods in the food stamp program.[1] Specifically the plaintiffs, having won fair hearing determinations that benefits were wrongfully withheld, challenge the policy of the food stamp program[2] which refuses to permit retroactive food

---

1. The plaintiffs are:

Carmen Avila (Connecticut). Avila was a participant in the food stamp program whose income for herself and her four children was derived entirely from public assistance grants. Because of administrative error she was not sent any food stamps between March 1971 and December 1971. In January 1972, after a fair hearing, her food stamp benefits were reinstated. However, no retroactive benefits were allowed.

Mercedes Ortiz Bermudez (New York). Bermudez was a participant in the food stamp program and was entitled to purchase $126 worth of food stamps every month for $94, thus saving $32 a month. In January 1972 her food stamp benefits were terminated due to administrative error and were not reinstated until April 16, 1972, despite numerous efforts to have them reinstated. When these benefits were restored she was not granted retroactive adjustments.

Kathy White (New York). White and her daughter were entitled to $60 worth of food stamps every month. On March 1, 1972, her A.F.D.C. payments, which were her sole source of income, were cut off. However, her food stamp benefits were not, even though she could not afford to participate in the program. Her A.F.D.C. payments were reinstated after a fair hearing on April 14, 1972, but her food stamp benefits were cut off from May 15, 1972 to June 15, 1972. These were later also reinstated. The plaintiff seeks retroactive benefits from March 15, 1972 to June 15, 1972.

Loretta Holby (Connecticut). The Holby household consisted for a time of herself, her seven children, and her mother. However, she received a food stamp allotment for only seven persons. During a periodic review she was informed that she was "underbudgeted" and that she should be receiving more benefits. However, shortly thereafter her food stamp benefits were terminated from February 1, 1972 to February 16, 1972, and again from June 1, 1972 to June 16, 1972. During this period of time her mother moved out of the household. This plaintiff seeks to recover for increased benefits for the period for which she was underbudgeted and also seeks to recover the retroactive benefits which were denied.

Carmen Diaz (Connecticut). Diaz and her five children participated in the food stamp program and received $144 worth of food stamps for $104. From February 16, 1972 to May 16, 1972 she did not receive any food stamps due to administrative error partly brought about because she changed residences. Although she was reinstated she was denied retroactive benefits.

Michael Hinchey (Connecticut). Through error his monthly income of $133.30 was stated to be $170.82; thus he was charged $46 a month for food stamps worth $88 rather than the $33 a month he should have been charged. Hinchey's complaint is that he was overcharged for the food stamps that he received rather than that he was denied participation in the program. It appears that Hinchey's particular problem is covered by 7 C.F.R. § 271.-1(q) (1973). This regulation provides that households which have been overcharged for their food stamps are entitled to be compensated to the extent that they were overcharged. Thus it appears that Hinchey is entitled by the federal government's own regulation to recover his extra expense and is not a proper party to challenge the policy in question here.

Apart from Hinchey all of the other plaintiffs are proper parties to bring this action and are proper parties to represent the class in attacking the challenged policy.

2. The policy of the federal government is embodied in an instruction of the Federal Nutritional Service, FNS Instruction 732–14 IV–D, which provides: "Past food consumption cannot be increased or otherwise altered. Therefore, following the hearing decision, retroactive adjustments in favor of the household shall not be permitted."

stamp benefits to welfare recipients who have been denied their right[3] to participate in the food stamp program. Plaintiffs seek declaratory and injunctive relief against the implementation of this policy. In addition the plaintiffs seek to prosecute this suit as a class action under Rule 23 of the Federal Rules of Civil Procedure and seek a nationwide order which would, in effect, grant retroactive benefits to "all impoverished persons in the nation who are denied retroactive food stamp adjustments although food stamps had been wrongfully withheld from them due to administrative error." Plaintiffs claim jurisdiction is based on 28 U.S.C. §§ 1331, 1332, 1337, 1361 and 5 U.S.C. § 702. Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

The district court,[4] after examining the legislative scheme of the food stamp program, held that the policy of denying retroactive benefits violated the purposes of the Food Stamp Act and that the federal defendants were liable for food stamp benefits which had previously been erroneously denied. The district court also held that the relief was to take the form of forward adjustments[5] rather than stamps issued retroactively. In addition, the district court held that the action was properly denominated a class action.[6] The class action aspect of the decision was stayed by the order of two circuit judges.

The issues before this court on appeal are: 1) Whether the federal government should be liable for retroactive adjustments or whether the State which wrongfully denied the food stamp benefits should be held liable; 2) Whether the State administrative agencies and officials are indispensable parties to this

---

3. It is settled that the plaintiffs as well as all others who meet the eligibility requirements have a *right* to participate in the food stamp program and are entitled to recover for the benefits which were wrongfully withheld from them. *See* Stewart v. Butz, 356 F.Supp. 1345, 1348–1349 (W.D.Ky.1973), where the court said:

> "The Food Stamp Act of 1964, Title 7 U.S.C. § 2011 et seq., was enacted by Congress to provide federal funds to permit low-income families to purchase a nutritionally-adequate diet. The Congress thereby created a *statutory right* for those low-income families who meet certain minimum national standards of eligibility. The old rule of law that such welfare benefits were a mere privilege or gratuity that could be withdrawn at will by government has been totally discredited. The landmark Supreme Court case of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) elevated welfare benefits, including food stamps to a position of *legal right* and statutory entitlement, rather than mere privilege. Accord: Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971)."

The defendants do not dispute the plaintiffs' right to retroactive benefits. Rather the basic controversy involved is who is responsibile for these retroactive adjustments.

4. Bermudez v. United States Department of Agriculture, 348 F.Supp. 1279 (D.D.C.1972).

5. As defined by the district court:

> "Forward adjustments mean that each member of the class is issued an adequate number of stamps per month at no cost until he recovers the excess money spent for food when stamps were withheld. Thus, if a hypothetical recipient had received a monthly allotment of $100 worth of food stamps at a cost of $20, he was receiving $80 worth of food at no cost. If wrongly denied stamps for one month, plaintiff has lost $80, which can be amortized over a period of four months by giving plaintiff the next four months worth of food stamps at no cost per month." 348 F.Supp. at 1281.

As the district court noted, this manner of relief eliminates the potential black market developing from a potential windfall of stamps issued retroactively. This form of relief has also been held appropriate in Tindall v. Hardin, 337 F.Supp. 563 (W.D.Pa. 1972), aff'd sub nom. Carter v. Butz, 479 F.2d 1084 (3d Cir. 1973); Stewart v. Butz, 356 F.Supp. 1345 (W.D.Ky.1973).

6. The district court in its order filed on October 27, 1972, ordered:

> "federally-reimburseable retroactive food stamp benefits, through forward adjustments, to all persons who have been wrongfully denied food stamp entitlements and have asked for a fair hearing after the filing of this suit, in the full amount that has been wrongfully denied, and also to all persons who henceforth are wrongfully denied food stamp entitlements in the full amounts that are wrongfully withheld."

action; 3) Whether the district court properly denominated this a class action. Before proceeding with a discussion of these issues, a brief summary of the Food Stamp Act and the food stamp program is necessary.

The Food Stamp Act was passed in 1964 to "safeguard the health and well-being of the Nations [sic] population and raise levels of nutrition among low-income households." [7] The program is designed to operate in the normal channels of trade. Its basic operation is relatively simple. A low-income household, which is eligible, is charged a certain amount of money depending on the amount of income and the number of persons in the household,[8] and in return receives food stamp coupons of a greater face value than the amount paid. These stamps are then redeemable at participating retail stores at their face value and are used to obtain a nutritionally adequate diet. The program is administered at the national level by the Food and Nutrition Service of the United States Department of Agriculture. In order for a household to be eligible for the program it is necessary for the State in which the household resides to participate in the program. Participation by each State is voluntary. If a State decides to participate, the certification of eligible households and payment for and issuance of the food stamp coupons is handled by local State agencies.[9] The Secretary of the United States Department of Agriculture establishes national uniform standards of eligibility for some households.[10] Other standards of eligibility are established by local State agencies.[11]

As for the financial aspects of the program, the Food Stamp Act provides that: "Coupons issued and used as provided in this chapter shall be redeemable at face value by the Secretary [of Agriculture] through the facilities of the Treasury of the United States." [12] The Act also provides that: "Funds derived from the charges made for the coupon allotment shall be promptly deposited . . . in a separate account maintained in the Treasury of the United States for such purpose." [13] In addition, "Coupons issued pursuant to this chapter shall be deemed to be obligations of the United States within the meaning of section 8 of Title 18." [14] Finally the Act also provides that Congress shall appropriate funds to cover the cost of the program,[15] to wit, the difference between the amount received for the food stamp coupons and the face value of the stamps. Each State which participates in the program is made responsible for financing out of its own funds the administrative costs which it incurs in carrying out its duties under the Act.[16] In addition, the Act provides that:

"If . . . there has been gross negligence or fraud on the part of the State agency in the certification of applicant households, the State shall upon the request of the Secretary deposit into the separate account authorized by section 2016 of this title, a sum equal to the amount by which the value of any coupons issued as a result of such negligence or fraud exceeds the amount that was charged for such coupons under section 2016(b) of this title." [17]

From an examination of these provisions it is clear that Congress intended for the federal government to be responsible for the cost of the benefits or "bonus" portion of the program, to wit, the difference between the face value of the coupons and the amount that the law-in-

7. U.S.C. § 2011 (1970).

8. 7 U.S.C. § 2016(b).

9. 7 U.S.C. § 2019(b).

10. 7 U.S.C. § 2014(b).

11. 7 U.S.C. § 2019(e).

12. 7 U.S.C. § 2013(a).

13. 7 U.S.C. § 2016(d).

14. 7 U.S.C. § 2023(d).

15. 7 U.S.C. § 2025(a).

16. 7 U.S.C. § 2024(a).

17. 7 U.S.C. § 2019(g).

come households pay for their coupons. It is likewise clear that the administrative costs of certification and distribution are to be borne by the participating States. Other courts faced with the same problem of statutory interpretation have so held. Tindall v. Hardin, 337 F. Supp. 563 (W.D.Pa.1972), aff'd sub nom. Carter v. Butz, 479 F.2d 1084 (3d Cir. 1973); Stewart v. Butz, 356 F. Supp. 1345 (W.D.Ky.1973).

It is true that the States are liable to the federal government for additional expenses which the federal government incurs as a result of errors or fraud in certification or in undercharging recipients for food stamps.[18] However, this case does not involve liability for additional expense incurred by the federal government. This case involves benefits for which the federal government is responsible but which were not paid out earlier. This statutory provision cited in note 18 may well limit State liability for substantive benefits to the instances enumerated therein. That question we do not need to determine in this case.

◼ The defendants argue that even assuming that the States are liable only for administrative expenses that the cost of retroactive food stamp benefits is an administrative expense since the question of retroactive benefits would never have arisen had there been no State administrative errors. Although at first glance this argument appears to have weight, a closer examination shows that it is entirely without merit. The fact that benefits were denied by the States to needy recipients does not make the cost of their retroactive adjustments an administrative expense. Retroactive adjustments, by their very nature, do not add to the budgeted expense of operating the program. It is merely expense which through error is delayed in its final payment.

The defendants also argue that if liability for retroactive benefits due to administrative errors is not placed upon the States that the States will not have any incentive to effectively administer the program. While the problem of effective administration of governmental programs is a legitimate concern of both the Congress and the States, it cannot and should not be used as a device to shift primary responsibility for benefits under the food stamp program. An examination of the Act, as pointed out above, discloses that the federal government is responsible for the benefits under the food stamp program.[19] The States have an incentive to carefully administer the Act since they must finance any fair hearings which are requested by recipients who feel that they were wrongfully terminated. If the Congress feels that the States need a stronger incentive in order to assure efficiency in their administration of the program, it can so provide by amending the Act.

The defendants also argue that the court in Carter v. Butz, 479 F.2d 1084 (3d Cir. 1973), a case dealing with this same problem, erroneously relied upon the doctrine of sovereign immunity in determining that the federal government rather than the States were liable for retroactive benefits. However, this argument is not persuasive. To the extent that sovereign immunity was relied on by the Court of Appeals for the Third Circuit it was that the Food Stamp Act did not create a cause of action for the welfare recipients against the State based on negligence. In any event this court does not base its decision upon any sovereign immunity which the State may possess but rather upon the fact that the statute creating the federal right clearly shows a congressional intent to hold the federal government liable for all the benefit costs of the food stamp program.

◼ We hold that the federal government is liable for retroactive food stamp benefits. Every other court which has dealt with the question is in agreement.

18. 7 U.S.C. § 2019(g); 7 C.F.R. § 271.7 (1973).

19. See notes 12 to 15 and accompanying text, *supra.*

724

Tindall v. Hardin, 337 F.Supp. 563 (W. D.Pa.1972), aff'd sub nom. Carter v. Butz, 479 F.2d 1084 (3d Cir. 1973); Stewart v. Butz, 356 F.Supp. 1345 (W. D.Ky.1973).

■ The defendants also contend that the States involved here, New York and Connecticut, are indispensable parties under Rule 19 of the Federal Rules of Civil Procedure and since they were not joined as defendants that the action should be dismissed.[20] The district court held that the States failed to meet the standards for indispensability imposed by the Supreme Court in Provident Tradesmens Bank & Trust Company v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), and that joinder of the States was not warranted. In the *Provident* case the Supreme Court raised the following question in determining whether joinder was necessary: "Can the decree be written so as to protect the legitimate interests of the outsiders and, if so, would such a decree be adequate to the plaintiff's needs and an efficient use of judicial machinery?"[21]

In this action the plaintiffs seek to adjudicate their rights vis-a-vis the federal government and request recission of federal policy. The order of the district court met the requirements set forth in *Provident*. The order was sufficient to meet the plaintiffs' needs. The interests of the States were protected as no liability was imposed on them. Only the federal defendants were held responsible for retroactive benefits. The district court noted correctly that the defendants' argument as to the indispensability of the States assumed the strength of its case on the merits. We find that the federal defendants and not the States are liable, and hence there is no such strength.

Finally, the plaintiffs seek to prosecute this action as a class action with a nationwide class. To hold each State an indispensable party would require that each State participating in the food stamp program be joined as a party. In view of our decision on the merits, this is as unnecessary as it would be unwieldy.

The plaintiffs urge that a class action is necessary in order to implement a uniform nationwide policy of retroactive adjustments. The plaintiffs contend that there are 11 million persons in the nation who are participating in the food stamp program. They do not describe how many of them have been wrongfully denied participation in the food stamp program and are entitled to retroactive adjustments. Probably this number is known only to the defendants. Neither of the other two cases involving responsibility for retroactive food stamp adjustments which have gone to judgment have given the nationwide relief sought in this action. In Tindall v. Hardin, 337 F.Supp. 563 (W.D.Pa.1972), the district court did not allow that action to proceed as a class action partly because it felt that the federal government would voluntarily rescind the policy that is the basis of this suit and partly because it felt that the precedential value of the judgment would make a class action unnecessary. Neither of these hopes have been fulfilled. On appeal the Third Circuit upheld this determination as within the discretion of the trial court although it hinted that it might have decided otherwise. In Stewart v. Butz, 356 F.Supp. 1345 (W.D.Ky.1973), the court in ordering retroactive food stamp benefits allowed the action to proceed as a class action and ordered relief to "All Food Stamp recipients in the Western District of Kentucky who, having won 'fair hear-

20. In the other two suits which have proceeded to judgment on this issue, Tindall v. Hardin, 337 F.Supp. 563 (W.D.Pa.1972), aff'd sub nom., Carter v. Butz, 479 F.2d 1084 (3d Cir. 1973); Stewart v. Butz, 356 F.Supp. 1345 (W.D.Ky.1973), the respective states which had wrongfully denied the bene- fits through administrative error were made parties to the suits. However, in both of these suits the federal government was held to be liable for the retroactive adjustments.

21. 390 U.S. at 112, 88 S.Ct. at 739.

ing' determinations that their food stamps were wrongfully withheld, have been denied retroactive benefits by the federal government." [22] This did not have the effect of nationwide relief.

The district court, as noted above, determined that this was properly a class action.[23] On review we are aware that: "The question of whether to allow a suit to proceed as a class action is one primarily for the determination of the trial judge. If he applies the correct criteria to the facts of the case, the decision should be considered to be within his discretion." Gold Strike Stamp Company v. Christensen, 436 F. 2d 791, 792–793 (10th Cir. 1970). *See also,* City of New York v. International Pipe and Ceramics Corporation, 410 F. 2d 295, 298 (2d Cir. 1969). Keeping this standard of review in mind, we conclude that the class action determination by the district court should be upheld. In order to proceed as a class action the four requirements of subsection (a) of Rule 23 of the Federal Rules of Civil Procedure must be met. The district court specifically so found.[24] In addition, the plaintiffs must meet one of the requirements established under subsection (b) of Rule 23. Here it is clear that the defendants have failed to grant retroactive adjustments to all those who have won fair hearing determinations that they were wrongfully denied participation in the food stamp program. Thus, the subsection (b)(2) requirement of Rule 23 has been met.

Nevertheless, defendants argue that the class action determination limits the needed discretion of the Secretary of Agriculture in administering the food stamp program. The plaintiff class was described by the trial court in such a way that they are all entitled to adjustments. Thus it would follow that the Secretary could not lawfully regulate otherwise and his discretion is in no way impaired.

Since the class action determination was within the discretion of the district court and the proper criteria was applied, the decision is affirmed. The stay granted pending the outcome of this appeal is dissolved.

For the reasons stated above the judgment of the district court is affirmed in all respects.