Carl AIKEN et al., Plaintiffs,

Richard Miller, Tom Gilley, and Helen Gilley, Plaintiffs in Intervention,

v.

Mario OBLEDO et al., Defendants.

Mario OBLEDO et al.,
Cross-Complainants,

v.

Earl L. BUTZ, Cross-Defendant.

Civ. No. S–75–76.

United States District Court,
E. D. California.

Dec. 7, 1979.

Robert M. Teets, Jr., Food Law Center, California Rural Legal Assistance, San Francisco, Cal., Christopher E. Hamilton, Modesto, Cal., Ralph Santiago Abascal, California Rural Legal Assistance, Sacramento, Cal., John F. O'Toole, California Rural Legal Assistance, Marysville, Cal., Neil J. Roberts, Marsha L. Jones, Legal Aid Foundation of Long Beach, San Pedro, Cal., for plaintiffs.

Herman Sillas, U.S. Atty., Richard W. Nichols, Chief Asst. U.S. Atty., Sacramento, Cal., Dennis DeLeon, Atty., U.S. Dept. of Justice, Civ. Div., General Litigation Section, Washington, D.C., for federal defendants.

Thomas E. Warriner, Deputy Atty. Gen., State of California, Sacramento, Cal., for state defendants.

Francis X. Bellotti, Atty. Gen., Commonwealth of Massachusetts, Paul W. Johnson, Garrick F. Cole, Asst. Attys. Gen., Boston, Mass., for applicant in intervention.

## MEMORANDUM

MacBRIDE, District Judge.

Two years ago, this court ruled that the defendant-Secretary of Agriculture had implemented certain rules governing eligibility for food stamps in violation of the publication requirements of 5 U.S.C. §§ 552 and 553. *Aiken v. Obledo*, 442 F.Supp. 628, 654 (E.D.Cal.1977). Having so ruled, this court then considered the prayer by plaintiffs and intervenors for compensation for those who lost benefits as a result of the illegal implementation of unpublished eligibility rules; compensation was requested in the form of forward adjustments in the cost of purchasing food stamps. After noting that other courts had approved such compensation, this court declared:

> Forward adjustments are made by discounting the price paid for stamps by those families whose food stamp applications were unlawfully denied or delayed because of the implementation of the [illegal] rules. Although the state agencies were the instrument for the enforcement of these rules, the federal government should be the party compensating the applicants because it is responsible for the benefit costs of the program and the state was required by federal regulations to follow the instructions issued by the FNS [Food and Nutrition Service of the Department of Agriculture]. . . . [T]he federal defendant will be required to submit a plan for compliance with this court's order, which will contain a provision for compensation by forward adjustments.

*Id.* at 654–55. Later in the opinion, this court granted summary judgment invalidating the state regulations adopted in conformity with the invalid federal rules. In holding the state regulations void, this court declared:

> because the state agencies merely implemented the invalid state regulations pursuant to their obligation to comply with federal instructions, it is all the more appropriate that the federal government, and not the State of California, reimburse those who lost benefits because of the use of the [illegal] rules.

*Id.* at 655–56.

In conformity with this court's orders, the federal defendants did submit a plan for compliance which was developed through lengthy negotiations among the parties. The plan for compliance was approved and implemented in two parts: the first part dealt with prospective notice to state agencies while the second provided for retroactive benefits. The first part of the plan was approved pursuant to a stipulation of the parties and order of the court on November 23, 1977. This order is included as Appendix I. Thereafter, the state defendants (the Secretary of the California Health and Welfare Agency and the Director of the California Department of Benefit Payments) filed objection to the second part of the proposed plan for compliance:

Defendants note that the plan will require a substantial effort by state defendants and their agents to restore to affected individuals benefits lost as a result of federal defendants' unlawful regulation. Nowhere in the plan, however, is it made clear that the *entire* cost of these restorative efforts is to be borne by federal defendants. It appears to state defendants that it was the intention of the court that federal defendants, having compelled the wrongful denial of benefits initially, should be burdened with the cost of now granting them.

State Defendants' Brief, filed Dec. 5, 1977. Plaintiffs also filed objections, but these were resolved through negotiations. On December 16, 1977, the parties stipulated that part II of the plan for compliance, as amended after negotiations, should be implemented promptly and that the state defendants' objections concerning the allocation of administrative costs could be reserved for resolution at a later date. On December 27, 1977, after hearing oral arguments on the matter, this court ordered that part II of the plan be implemented immediately. This order is included as Appendix II. The parties requested additional time in which to brief the question of allocation of administrative costs raised by the state defendants, so further briefing was ordered and the matter taken under submission. That briefing having been filed, the court is now prepared to rule on the matter.

Under the Food Stamp Act, the various states assume the responsibility for certification of qualified households, issuance of food stamp coupons, and control and accountability for the coupons. 7 U.S.C. § 2020. The federal government is responsible for funding the benefit payments themselves, that is, the dollars actually provided to recipients in the form of food stamp coupons. 7 U.S.C. §§ 2013, 2027. The administrative costs of the Program, however, are shared by the federal and state governments. Section 2025 of the Act provides:

> The Secretary is authorized to pay to each State agency an amount equal to 50 per centum of all administrative costs involved in each State agency's operation of the food stamp program, which costs shall include, but not be limited to, the cost of (1) outreach, (2) the certification of applicant households, (3) the acceptance, storage, protection, control, and accounting of coupons after their delivery to receiving points within the State, (4) the issuance of coupons to all eligible households, and (5) fair hearings . . .

7 U.S.C. § 2025(a). That section authorizes payment of a higher portion of the administrative costs associated with investigations and prosecutions and with administration of the Program on Indian reservations. In addition, the Secretary is authorized to increase the federal share of the administrative costs to 60 percent if a state agency's performance meets specified quality standards, 7 U.S.C. § 2025(c), or to withhold the federal cost-sharing funds if a state fails to meet designated standards.

The United States does not dispute that it must pay the full amount of the benefits themselves which this court ordered must be retroactively reimbursed pursuant to part II of the plan for compliance. At issue instead are the administrative costs which the states incurred in effecting the reimbursement; these administrative costs include the salaries, travel expenses, building and equipment costs, data processing expenses, and other, similar costs allocable to the states' compliance with the reimbursement order. The state defendants urge that the federal government should assume responsibility for 100 percent of these administrative costs because they were brought on by its mistake.

> State defendants' responsibility for administrative costs is . . . limited to the cost of performing the duties assigned to it under the Act. Nowhere in any provision in the Act is a state required to pay for the cost of administrative errors of the federal government. The activities required by the Plan of Compliance flow entirely from the failure of the federal government to comply with

its own requirements in issuing directives. Had the federal government not erred, no Plan of Compliance would have been required. Expenditures required by the plan are not within those duties, the cost of which are to be borne by the states under section [2025]. Accordingly, federal defendants are responsible for payment of the entire administrative cost of restoring the lost benefits as directed in the plan.

State Defendants' Brief, filed Feb. 14, 1978, at 3. The United States takes the position that the administrative cost sharing allocation set forth in section 2025 governs regardless of fault. The United States points out:

Nothing in the relevant statute or regulations in any way delimits the type of administrative cost that the federal or state government may be called upon to pay. Because the obligations imposed by the statute and regulations are not limited to particular contexts, state and federal government must share equally the costs incurred in administering a retroactive benefit plan that resulted from the other's error.

United States' Brief, filed Dec. 20, 1977, at 3.

Although there is no direct authority on the point, the United States has the better of the two arguments. The Act creates administrative cost sharing allocation which permits a ready division of expenses. Any alteration of that allocation based on culpability for administrative costs incurred would require significant fact-finding as to the degrees of culpability of the federal government and the various participating states. Certain states may well have been instrumental in causing the promulgation of the invalid eligibility requirements; other states may have assumed culpability by later participation in applying or approving the requirements. Moreover, difficult fact-finding problems arise in allocating the portion of an employee's salary or of a building's use attributable to the payment of retroactive benefits under the court ordered plan. Extensive regulations govern the al-location of administrative costs and the determination of those expenses on which the United States will contribute its 50 percent share under section 2025. Certain expenses are generally allowable, others are allowable only with prior federal authorization, and still others are not allowable under any circumstances. *See generally* 7 C.F.R. Part 275 & Appendix A. In fact, it can hardly be denied that the very task of attributing administrative costs either to the implementation of the plan for compliance or the regular business of the agency would entail significant additional administrative costs. In the absence of an indication from Congress that the court should alter the administrative cost sharing allocation of section 2025 under these circumstances, this court must hesitate to order payment of administrative costs in a manner other than that specified by the Act.

There are several cases in which the courts considered the proper allocation of benefit costs when benefits were wrongfully denied because of state administrative errors and retroactive benefits were ordered. In *Carter v. Butz*, 479 F.2d 1084 (3d Cir.), *cert. denied*, 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973), the United States urged that imposing liability for wrongfully withheld benefits on the states "would provide an incentive to the states to police strictly the administration of the food stamp program" and would assign liability based on fault in conformity with negligence theories. The Third Circuit rejected these arguments, stating:

neither the Act or the regulations in effect when plaintiffs were deprived of benefits provide specifically for the imposition of such an incentive-penalty upon the states. Thus we are dealing with the area of judicial implication of appropriate remedies to redress federal statutory rights.

*Id.* at 1088. The court declined to impose the expense of providing benefits to correct the administrative errors of the states in accordance with fault, holding that the allocation set by the Act governed the matter. The District of Columbia Circuit took the

1318

same approach in *Bermudez v. United States Department of Agriculture*, 160 U.S. App.D.C. 150, 490 F.2d 718 (D.C.Cir.), *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973), *followed in Stewart v. Butz*, 491 F.2d 165 (6th Cir. 1974).

In both *Bermudez* and *Carter*, the courts looked in part to the fact that the benefit costs that the United States sought to shift to the states were specifically assigned by the Act to the federal government. The *Bermudez* court explained:

> While the problem of effective administration of governmental programs is a legitimate concern of both the Congress and the States, it cannot and should not be used as a device to shift primary responsibility for benefits under the food stamp program. An examination of the Act, as pointed out above, discloses that the federal government is responsible for the benefits under the food stamp program. The States have an incentive to carefully administer the Act since they must finance any fair hearings which are requested by recipients who feel that they were wrongfully terminated. If the Congress feels that the States need a stronger incentive in order to assure efficiency in their administration of the program, it can so provide by amending the Act.

*Bermudez v. United States Department of Agriculture, supra*, 160 U.S.App.D.C. at 155, 490 F.2d at 723. Although *Carter* and *Bermudez* concerned benefit costs while the instant action concerns administrative costs, the same principles control the issue. In light of the *Carter* and *Bermudez* decisions, this court would not readily reject the allocation of administrative costs decreed by Congress.

Several years after the *Bermudez* and *Carter* decisions, Congress enacted a significant revision of the Food Stamp Program which altered various provisions throughout the Act based on lengthy studies and hearings on suggested improvements. Act of Sept. 29, 1977, Pub.L.No. 95–113, tit. XIII, § 1301 *et seq.*, 91 Stat. 958. Although no radical changes were made in the adminis-

trative cost sharing provisions, the formula was refined to simplify the procedures and to increase the incentives to reduce errors in eligibility determinations. Examination of the legislative history of these amendments reveals that Congress was conscious of the *Bermudez* and *Carter* decisions but did not make specific provision for judicial alteration of the prescribed administrative cost sharing requirements. H.R.Rep. No. 95–348, Conference Rep. No. 95–599, 95th Cong., 1st Sess. (1977), *reprinted in* 1977 U.S.Cong. & Admin.News, pp. 1704, 1971, 1979, 2228–37, 2327–43, 2500–01. The only change in the Act which may have been occasioned by the court decisions requiring that retroactive benefits be paid to recompense those persons whose benefits were wrongfully withheld appears in section 2020(e). That section sets forth the requisites for approval of the state plans of operation to be formulated by the several states. Although section 2020(e) follows the basic format of the prior law governing the state plans of operation, namely, former section 2019(e), section 2020(e)(11) specifically requires that the state plans of operation provide

> for the prompt restoration in the form of coupons to households of any allotment or portion thereof which has been wrongfully denied or terminated.

7 U.S.C. § 2020(e).

Under the circumstances presented to this court, it would be improper to alter the method of allocating responsibility for the administrative costs incurred in fulfilling the obligations imposed on the defendants under the plan for compliance in this action. Congress has clearly designated the administrative cost sharing arrangement to be followed in connection with the joint federal-state administration of the Food Stamp Program. Although the Act does not explicitly require that its prescribed allocation be applied to the particular administrative costs at issue herein, the Act gives no ground for this court to conclude that it is free to fashion its own allocation under these circumstances. Although construction of statutes based on congressional silence is not generally favored, this court

cannot avoid the conclusion that Congress intended that the administrative cost sharing provisions of section 2025 should govern in a case such as this, as in all other circumstances encompassed by the terms of the section. Accordingly, this court holds that the plan for compliance approved on December 27, 1977 subject to resolution of the state defendants' objection considered herein is now approved in toto; the objection raised by the state defendants is without merit. Accordingly, this court orders that the administrative costs incurred in implementing the plan for compliance shall be shared by the federal and state governments in accordance with the provisions of section 2025.

IT IS SO ORDERED.

## APPENDIX I

### November 23, 1977 Order

On October 18, 1977 defendant Bergland was ordered to submit a plan for compliance with the Court's order of that date. On November 17, 1977 defendant Bergland filed the Federal Defendant's Plan for Compliance with this Court's Order of October 18, 1977. On November 23, 1977 attorneys representing the plaintiffs and state defendants filed a stipulation stating that they had no objections to immediate court approval of Part I of the aforesaid Plan for Compliance.

Having considered Part I of the Federal Defendant's Plan for Compliance and having reviewed the stipulation by plaintiffs and state defendants, Part I of that Plan is hereby approved. Therefore, it is HEREBY ORDERED that defendant Bergland immediately implement the following plan:

### Notification to State Agencies

Within five (5) days of approval by the Court of Part I of this Plan, the United States Department of Agriculture will send a telegram to all Food and Nutrition Service Regional Administrators and those State Welfare Commissioners affected by the court order informing them of the order and requiring that the court order be imple-

mented for the ongoing caseload. The telegram (a copy of which is attached as Exhibit I) will set forth the appropriate language of 7 CFR 271.4(a)(2)(iii) and will direct all such State agencies to disregard paragraph 2313 of FNS(FS) Instruction 732–1, insofar as it requires a collateral contact for certification pending verification, and insofar as it limits the use of the certification pending verification procedure to one time during a six-month period. The telegram will also direct the State agencies to issue notices to all local food stamp offices within the State requiring that appropriate steps be taken to implement the requirements of the telegram within 30 days of receipt of the telegram. The State agencies will be directed to mail to the Food and Nutrition Service (FNS), USDA, within 30 days of receipt of the telegram, a report confirming that the State agency has sent the required notice to all local offices indicating the date or date(s) such notice was sent and including a copy of the notice. FNS will review the reports of the State agencies when received and issue appropriate supplemental directives within 30 days to any State agency which FNS determines has not complied with the telegram. Appropriate directives will also be issued within 15 days to any State agency which has not provided a report within the time required. Copies of the State agency reports, and any subsequent FNS directives relevant thereto, will be provided promptly to counsel for plaintiffs in this matter.

The telegram described above will also direct the State agencies to commence whatever administrative procedures are necessary to effectuate the necessary changes in the State's program manual and to submit copies of the revised manual provisions for approval as soon as possible. Copies of all manual revisions submitted to FNS for approval, which are relevant to this matter, will be provided promptly to plaintiffs' counsel when they are approved by FNS or immediately upon request by plaintiffs' counsel.

On the date the above described telegram is sent to the FNS Regional offices and

State agencies, it will also be submitted to the Federal Register for publication.

/s/ T. J. MacBride
United States District Judge

## EXHIBIT 1

TO: PBS

ALL FNS ADMINISTRATORS
ALL STATE WELFARE COMMISSIONERS

RE: AIKEN V. USDA COURT SUIT

A COURT ORDER ISSUED BY THE U. S. DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA IN AIKEN V. USDA, ET AL., CIV. NO. S–75–76, TJM, HAS ENJOINED USDA FROM ENFORCING THE PROVISIONS OF SECTION 2313 OF FNS (FS) INSTRUCTION 732–1 INSOFAR AS IT REQUIRES A COLLATERAL CONTACT FOR CERTIFICATION PENDING VERIFICATION AND INSOFAR AS IT LIMITS THE USE OF THE CERTIFICATION PENDING VERIFICATION PROCEDURE TO ONE TIME DURING A SIX–MONTH PERIOD. HENCEFORTH CERTIFICATION SHALL "BE MADE FOR 30 DAYS WITHOUT VERIFICATION OF ELIGIBILITY FACTORS WITH RESPECT ONLY TO HOUSEHOLDS WHICH REPORT AN INCOME SO LOW THAT THEY HAVE NO PURCHASE REQUIREMENT AND WHICH APPEAR, ON THE BASIS OF OTHER INFORMATION FURNISHED, TO BE ELIGIBLE FOR PARTICIPATION." (7 CFR 271.4(a)(2)(iii) THEREFORE, ELIGIBILITY WORKERS CAN NO LONGER REQUIRE A COLLATERAL CONTACT BEFORE GRANTING CERTIFICATION PENDING VERIFICATION TO HOUSEHOLDS ELIGIBLE FOR THIS PROVISION AND CAN NO LONGER LIMIT THE NUMBER OF TIMES A HOUSEHOLD MAY BE CERTIFIED PENDING VERIFICATION. HOWEVER, AFTER EACH ONE–MONTH CERTIFICATION PENDING VERIFICATION, THE HOUSEHOLD MUST PROVIDE FULL VERIFICATION OF ITS CERCUMSTANCES BEFORE THE STATE AGENCY GRANTS ANY FURTHER CERTIFICATION.

TO COMPLY WITH THIS COURT ORDER STATE AGENCIES MUST IMMEDIATELY NOTIFY ALL LOCAL FOOD STAMP OFFICES OF THIS CHANGE IN POLICY TO TAKE EFFECT AT THE LOCAL LEVEL WITHIN 30 DAYS OF THE DATE OF THIS TELEGRAM AND ASSURE THAT ALL ELIGIBILITY WORKERS ARE FULLY AWARE OF THE CHANGE REGARDING CERTIFICATION PENDING VERIFICATION. WITHIN 30 DAYS OF THE DATE OF RECEIPT OF THIS TELEGRAM, STATE AGENCIES MUST MAIL TO FNS REGIONAL OFFICES A REPORT CONFIRMING THAT THE STATE AGENCY HAS SENT THE NOTICE REQUIRED BY THE TELEGRAM TO ALL LOCAL OFFICES, INDICATING THE DATE OR DATES SUCH NOTICE WAS SENT TO SUCH OFFICES, AND TRANSMITTING A COPY OF THE NOTICE SENT TO LOCAL OFFICES. IN ADDITION, STATE AGENCIES MUST IMMEDIATELY BEGIN THE ADMINISTRATIVE PROCEDURES NECESSARY TO AMEND THEIR FOOD STAMP MANUALS TO COMPLY WITH THE NEW POLICY. PAGE CHANGES MUST BE SUBMITTED TO FNS REGIONAL OFFICE FOR APPROVAL AS SOON AS POSSIBLE. PROCEDURES FOR GRANTING RETROACTIVE BENEFITS PURSUANT TO THE ORDER WILL BE FORTHCOMING.

ADMINISTRATOR

## APPENDIX II

### December 27, 1977 Order

On October 18, 1977 defendant Bergland was ordered to submit a plan for compliance with the Court's order of that date. On November 17, 1977 defendant Bergland filed the Federal Defendant's Plan for Compliance with this Court's Order of October 18, 1977. On November 23, 1977 the Court approved Part I of the Federal Plan for Compliance and ordered that it be implemented immediately.

On December 16, 1977 defendant Bergland filed an Amended Plan for Compliance which contained a Stipulation signed by attorneys for all parties limiting the issues left to be resolved by this Court. Since December 16, 1977 the remaining disputes between plaintiffs and defendant Bergland has been resolved.

Having duly considered Part II of the federal defendant's Amended Plan for Compliance and the plaintiffs' stipulation to the immediate implementation of that Amended Plan, IT IS HEREBY ORDERED that defendant Bergland immediately implement the following Amended Plan for Compliance:

### Implementation of Retroactive Benefits

A telegram shall be sent to all Food and Nutrition Service Regional Administrators and those State Welfare Commissioners affected by the court order, informing them of the requirement that households whose application was denied, delayed, or never made after August 5, 1974, will be entitled to retroactive benefits if the collateral contact required in Section 2313 caused the delay or denial of certification pending verification or the household had exhausted the number of times it could be certified in a six-month period using the certification pending verification procedure. This telegram shall notify such persons of the following:

A. *Notice of entitlement to retroactive benefits.* State agencies will be instructed to print posters and mailing stuffers which contain the attached sample language. If more than 5 percent of a project area's food stamp caseload has a primary language other than English, the notice shall also be printed in that language. Within 60 days from the date the telegram is transmitted, each State agency will, at a minimum, be required to distribute the notices as follows:

(1) Display a poster containing the contents of the notice in the reception area of each welfare and food stamp office and in each issuance office;

(2) Either mail the notice to currently participating food stamp households concurrently with their ATP cards in areas where ATP cards are mailed or hand the notice to currently participating households for three consecutive months when they purchase their food stamp allotment; and

(3) Provide notices to local Community Action Programs, general assistance agencies, legal services programs funded by the Legal Services Corporation, State employment service and unemployment compensation offices, and all other groups listed in the State's Outreach Plan for their use in distributing to households potentially eligible for restoration of lost benefits under the court order and for posting in such offices.

In those areas where it is possible and practicable to conduct a case file review, the State agency shall send an individual notice to those households which were certified at the zero purchase level but did not receive stamps until the month following the month of application or, if the date of initial contact is known, the month following the month of initial contact. Examples of States where it may be possible and practical to conduct a case file review could include those States with a small food stamp population or those States with computer retrieval systems that can readily identify such households. States that do conduct a case file review would be exempt from the requirement of A(2) above which specifies that the notice must either be mailed with the ATP card or handed to households when they purchase their food stamp allotment.

Each State agency shall prepare a press release which shall include, as a minimum, the verbatim language of the attached notice which shall be distributed to state and local English and non-English print media. Where foreign language notices are being printed pursuant to Section A of this plan, press releases in those languages shall be distributed to the foreign language print media. If the State's press releases are not normally distributed to local print media throughout the state, the local welfare departments shall be responsible for distributing the press release to the local print media.

FNS will contact other Federal agencies (such as HUD, DOL) to enlist their aid in contacting households potentially members of the class and will advise counsel for plaintiffs of the results of such contacts.

B. *Procedures for granting restoration of lost benefits.* State agencies shall be instructed to determine if a household's benefits were denied or delayed only if the household requests (either in writing or orally) that the State agency do so and only if the household has signed an application provided by the State agency which contains the following:

(1) A statement that the household's benefits may have been denied or delayed after August 5, 1974, as a result of any request that claimants verify or prove the information they provided, any collateral contacts done by the eligibility worker, and/or as a result of the limitation on the use of the certification pending verification procedure to once during a six-month period.

(2) A statement of the household's approximate income, resources and expenses at the time application for certification, pending verification was made (expenses need not be supplied if the income alone results in a zero purchasing requirement);

(3) A provision which states that households filing this application will be entitled to retroactive benefits if they are determined to have been eligible without a purchase requirement when their benefits were denied or delayed;

(4) A provision which states that an applicant who makes any fraudulent claim therein will be subject to prosecution for fraud.

Once the request is made and the application is received, the State agency shall verify that the household's income would have qualified it to be certified using the certification pending verification provisions of 7 CFR 271.4(a)(2)(iii). In cases where an application was never filed or where there is no information in the case file to verify that the household's income was so low that it would not have been assigned a purchase requirement, the household will be responsible for providing verification of its income with the assistance of the State agency. If the household cannot provide the verification or the State agency determines that the verification is inadequate, the household shall be offered an opportunity to file a statement under penalty of perjury or false swearing as to those facts which are necessary to determine whether it is a member of the class and which remain insufficiently verified. Retroactive benefits shall be awarded to such households unless the State agency determines that the information on the application and/or signed statement is unclear, incomplete, inconsistent or otherwise raises doubt. If the State agency denies retroactive benefits, the household will be provided a notice stating the reason for the denial and advising the household of the right to a fair hearing on that determination. If a fair hearing is requested, the hearing authority must consider the adequacy of the applicant's signed statement and other pertinent evidence, and may not deny retroactive benefits solely on the basis of lack of verification. Any other household denied retroactive benefits under the court order shall also receive a notice of the decision and shall be notified of its right to request a fair hearing. State agencies shall determine whether or not a household is entitled to retroactive benefits within 30 days from the date verification of the household's income is obtained or the date the household submits a signed statement under penalty of perjury or false swearing. Nothing contained in this plan, however, shall in any way reduce the 60 day time limit allotted for accomplishing final administrative action on a request for a fair hearing as provided in 7 CFR 271.1(*o*).

If the household no longer resides in the project area where the denial or delay occurred and requests retroactive benefits under the court order, the project area where the household is currently residing shall contact the household's former project area, and, if the household is entitled to retroactive benefits, request that the former project area submit a completed Form FNS–286 which contains information on the amount of lost benefits the household is

entitled to receive. In the event retroactive benefits are denied in the household's former project area, the household may request a fair hearing in the household's current project area.

If the household was or would have been eligible at the zero purchase level, the State agency will restore any benefits the household would have received in the month the application was filed, or if the initial contact is known, in the month an initial contact was made. Households which received a full monthly allotment in the month the application was filed, or if applicable, in the month the initial contact was made, shall not be entitled to retroactive benefits under this plan. State agencies will be instructed to restore lost benefits to those households which are entitled to retroactive benefits in accordance with the following procedures:

(1) Any household which is currently participating in the program will receive 100 percent of the coupon allotment to which it is entitled at a zero purchase requirement until the retroactive benefits are exhausted. The benefits made available to the household will then revert to the coupon allotment and purchase requirements prescribed by the certification.

(2) The affected household which is currently eligible for participation with a zero purchase requirement will receive 150 percent of the coupon allotment to which it is entitled until its retroactive benefits are exhausted. The benefits made available to the household will then revert to the coupon allotment prescribed by the certification.

(3) Households which are eligible for retroactive benefits under this plan but which are currently ineligible for participation in the program will receive 100 percent of the coupon allotment to which they would be entitled if they were currently eligible at a zero purchase requirement until their retroactive benefits are exhausted. The household will then be dropped from the program if it is still ineligible.

C. *Monitoring of State Compliance.* The following information submitted to FNS will be made available to the plaintiffs' attorneys promptly upon receipt:

(1) *Notification to households of entitlement to lost benefits.* Within 60 days from the date the telegram is transmitted, each State agency will be required to report to FNS what action has been taken to notify households of their possible entitlement to restoration of lost benefits under the court order; and

(2) *Retroactive benefits.* By November 1, 1978, each State agency shall be required to submit to FNS a report containing the following information as of September 30, 1978:

(1) The number of persons that contacted the local food stamp offices in response to the notices;

(2) The number of households who signed applications or statement under penalty of law;

(3) The number of households that were entitled to restoration of lost benefits under the court order;

(4) Number of fair hearings conducted;

(5) Number of fair hearings in which the claimant's appeal was sustained; and

(6) The amount of retroactive benefits households were authorized to receive due to the court order.

On or before January 11, 1978, the federal defendant shall submit to the plaintiffs' attorneys copies of the telegram and any application or reporting forms which will be sent to the State agencies. Within 15 days after USDA has received written concurrence of the telegram and any related documents from the plaintiffs' attorneys, USDA shall send the telegram to all State Welfare Commissioners and FNS Regional Administrators and submit a copy of the telegram to the Federal Register for publication. The application or reporting forms shall be sent to the State Welfare Commissioners and FNS Regional Administrators under separate cover.

/s/ Thomas J. MacBride
Judge, United States
District Court

1324

NOTICE

You may be eligible for additional food stamps as the result of a recent court decision in *Aiken v. Obledo* regarding emergency issuance of food stamps. For several years, food stamp offices have been allowed to issue food stamps on an emergency basis—without first requiring full proof of need for stamps—to households with little or no income (usually less than $90 per month). However, before food stamp offices would issue these stamps, they did have to either contact a person who was not a member of the household in order to get some confirmation of the household's need for stamps or have the household itself provide proof of its need. And no household was allowed to receive these emergency stamps more than once every six months. Now a Federal court has ruled that it was not legal to limit a household to emergency stamps only once every six months or to require confirmation of the household's need before the emergency stamps could be issued.

So, if you applied for or asked about food stamps since August 1974, you may be eligible for additional benefits or a reduction in your current purchase price, if you fit into either of the following groups:

(1) You received food stamps at no cost but did not begin receiving the stamps in the same month you applied.

(2) Even though your household had little or no income (this would most likely mean income of less than $90 per month), you contacted a food stamp office but did not apply, or applied but did not follow up on your application, because you thought there would be difficulty or delay in obtaining proof of your need to receive stamps immediately. (Some although not all of the persons in these two groups will qualify for these additional benefits.)

If you think you fit into either of these groups, contact the welfare department nearest to you or contact the FNS Regional Office at the following address:

You do not have to be currently eligible for food stamps in order to get the month's worth of benefits you lost in the past.