Caroline HARRINGTON et al., Plaintiffs,

v.

Barbara BLUM, Individually, and as Commissioner of the New York City Department of Social Services, et al., Defendants.

No. 77 CIV. 6056.

United States District Court, S. D. New York.

Oct. 17, 1979.

Community Action for Legal Services, Inc., Alice McInerney, Kathy Ann Bennett, Philip Damashek, Michael A. O'Connor, New York City, Paul Wilson, New York City, (of counsel), for plaintiffs.

Robert Abrams, Atty. Gen., State of New York by Marian R. Buchbinder, Asst. Atty. Gen., New York City, for defendants State of New York.

Allen G. Schwartz, Corp. Counsel, New York City (Ilene W. Brown, New York City,

of counsel), for defendants City of New York and others.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This case was initiated in December, 1977, on behalf of public assistance applicants whose income and resources were so low that they were entitled to obtain food stamps at no cost and on an expedited basis. The complaint against officials of the City and State of New York alleged that the New York City Department of Social Services had no procedure for determining the eligibility for, and issuance of, expedited food stamp benefits to persons and households applying for public assistance.

Judge Frankel, initially assigned to this case, granted a temporary restraining order (TRO) directing that the requested benefits be issued to the named plaintiffs. On December 22, 1977 the City defendants announced an Interim Plan for the provision of expedited food stamp benefits to public assistance applicants. On January 23, 1978, Judge Frankel denied plaintiffs' motion for a preliminary injunction and plaintiffs' motion for class certification.

Thereafter, on February 27, 1978, the City defendants implemented what shall be referred to as a "Permanent Plan" for providing expedited issuance of food stamp benefits to public assistance applicants. In July of that year, the City defendants filed a motion for summary judgment; the plaintiffs moved for leave to file a supplemental complaint adding several named plaintiffs and moved for class certification and partial summary judgment with respect to the "Permanent Plan."

After this case was transferred to the undersigned judge the plaintiffs' motion to permit the filing of a supplemental complaint was granted, to the extent that the complaint was to be designated as an intervenors' complaint. The court also determined that class certification was appropriate and certified the following two classes:

CLASS A: All persons who applied for public assistance in New York City between April 1, 1977 to December 22, 1977 and who were eligible for emergency food stamp benefits.

CLASS B: All persons who applied for public assistance in New York City between February 28, 1978 and August 15, 1978 and who were accepted for public assistance and who were denied emergency food stamp benefits as a result of more restrictive eligibility criteria applied to them by the defendant than was permitted by State and federal law.

Remaining to be decided by the court at this time are the City defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment with respect to the "Permanent Plan." All parties agree that present food stamp regulations are not involved in this case and that the so-called "Permanent Plan" is no longer in effect.

Counsel for plaintiffs suggested in oral argument that plaintiffs' motion for partial summary judgment now be considered a motion for full summary judgment, adjudicating the claims of both Class A and Class B. As the papers submitted by counsel concerning the motion for partial summary judgment have thus far focused on the claims of Class B, the court declines to construe plaintiffs' motion for partial summary judgment as a motion for full summary judgment. Accordingly, the court now considers only the claims of Class B in this opinion. Of course, plaintiffs are free to file a motion for summary judgment adjudicating the claims of Class A, if plaintiffs so desire.

The food stamp program in the City of New York is a federally funded program pursuant to 7 U.S.C. § 2011 *et seq.* The purpose of the "Permanent Plan" was to provide an *emergency* Authority to Purchase (ATP) card which allowed food stamp purchases by *applicants* for public assistance who were awaiting certification of eligibility for welfare benefits and who were also entitled to emergency relief. Under this emergency program, an applicant received an application package containing information on emergency food stamps and

then was scheduled by a receptionist for an interview appointment. At the interview, the public assistance applicant was screened for eligibility for public assistance. Applicants whose cases were later rejected received by mail a notice containing information about non-public assistance food stamps. Applicants whose cases were accepted for public assistance at the time of the interview were issued an ATP card under certain circumstances. Applicants whose cases were pending following the interview were issued an *emergency* "zero purchase" ATP card under certain circumstances—the card allowed the applicant to obtain food stamps at no cost for thirty days. Eligibility for the card was to be determined by "the weight of the evidence"; the standard to be applied was a "no food/no resources" test.

Prior to December 22, 1977, however, there existed no procedure within the New York City Department of Social Services for certification pending verification nor any procedure for immediate issuance of "zero purchase" food stamp benefits to public assistance applicants.

*City Defendants' Motion for Summary Judgment*

■ The City defendants have moved for summary judgment dismissing the entire case on the ground that this action is moot. The City defendants originally advanced two theories. First, it is argued, the City's "Permanent Plan" provided the relief sought by the original plaintiffs, emergency food stamp aid to public assistance applicants. Second, it was argued, the three original named plaintiffs had already been accorded full relief as a result of Judge Frankel's temporary restraining order (TRO).

The City defendants' arguments must fail in light of the subsequent course of litigation in this case. First, this court granted plaintiffs' motion to permit the filing of a supplemental complaint which this court designated as an intervenors' complaint. As this complaint introduced several new plaintiffs who have not received any relief, the fact that the original named plaintiffs may have received full relief under the TRO is of no particular importance. Second, this court granted plaintiffs' motion for class certification. Even if this case were moot with respect to all named plaintiffs, which it is not, this is certainly a case where class certification should "relate back" to the filing of the original complaint, thus allowing a class action to proceed even if moot with respect to named plaintiffs. *See Sosna v. Iowa*, 419 U.S. 393, 402 n.11, 95 S.Ct. 553, 559 n.11, 42 L.Ed.2d 532 (1975).

Members of the plaintiff classes may have suffered injuries which remain unredressed despite the defendants' implementation of the "Permanent Plan." Absent reason to believe otherwise, it would seem obvious that this case is not moot so long as class members who were wrongly denied food stamp benefits, whether under the "Permanent Plan" or before its implementation, do not later receive the benefits to which they were entitled. It should be noted at this point that the State defendants argue that a retroactive award of food stamps against the State would be barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). As discussed below, this court rejects this contention. But even assuming, arguendo, that a retroactive award against the State is barred, it is well-established that a retroactive award against the City is not similarly barred. *See, e. g., Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 461 (1977); *Edelman v. Jordan, supra*, 415 U.S. at 667 n.12, 94 S.Ct. at 1358 n.12. As a retroactive award of food stamps is available against the City, if not the State as well, this case is clearly not moot with respect to the members of the plaintiff classes. Accordingly, the City defendants' motion for summary judgment is denied.

*Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs have moved for partial summary judgment with respect to certain policies and procedures adopted by the defendants

in administrative letters 78 ADM–13 and IM Memo 4/78. In particular, plaintiffs challenge the "Permanent Plan's" imposition of several eligibility conditions:

1) that persons have "no resources" in order to obtain emergency food stamps;

2) that a person or household must have "no food and no resources available to purchase food";

3) that a person show that he or she "cannot manage" while the public assistance application is being processed;

4) that emergency food stamp benefits must be denied if the public assistance application is denied;

5) that factors of eligibility be verified by a "collateral contact" even where delay might result; and

6) that a "weight of the evidence" standard was to be used.

There is no genuine issue of material fact that defendants' "Permanent Plan" adopted these policies and procedures. Plaintiffs do not move for summary judgment with respect to policies and procedures which may have affected Class A, prior to the adoption of an emergency food stamp plan for public assistance applicants.

■ It is clear that States must use the federal eligibility standards in determining eligibility for food stamps. 7 U.S.C. §§ 2014(b), 2019(e); *see Knebel v. Hein*, 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977). State or local policies or practice inconsistent with federal statutes or regulations are invalid. *See, e. g., Madden v. Oklahoma*, 523 F.2d 1047 (10th Cir. 1975); *Levy v. Toia*, 434 F.Supp. 1081 (S.D.N.Y.1977); *Dupler v. City of Portland*, 421 F.Supp. 1314 (D.Me.1976); *Giguere v. Affleck*, 370 F.Supp. 154 (D.R.I.1974). Even where a state adopts an optional procedure, such as expedited certification, its policies and procedures must conform to federal law. *See Tyson v. Norton*, 390 F.Supp. 545, 564 (D.Conn.), *modified*, 523 F.2d 972 (2d Cir. 1975) ("Having elected . . . to pro-

vide 30-day emergency certifications, the defendants are bound to operate the program in a nonarbitrary manner so as to insure equal treatment for all similarly situated low income households.")

The Secretary of Agriculture has established a procedure to determine food stamp eligibility, measuring income, resources, and nonfinancial criteria of applicant households. 7 C.F.R. § 271.3 (1978). Where an applicant household has a net food stamp income of $30 or less, food stamps may be obtained without charge ("zero purchase") in an expedited certification procedure. 7 C.F.R. § 271.4(a)(2)(iii) (1978). Under the expedited "certification pending verification procedure" which states may choose to adopt, zero purchase households may be certified in an interview for food stamps for a thirty day period—no immediate verification of eligibility factors is necessary. 7 C.F.R. § 271.4(a)(2)(iii) (1978). "If the State agency opts to use this procedure, it must be used in every project area and must be applied to all zero purchase households." 43 Fed.Reg. 31409 (July 21, 1978).

On April 1, 1977, and again on March 1, 1978, the New York State Department of Social Services adopted the expedited certification procedure for all zero purchase households. *See* 77 ADM–7, *New York State Food Stamp Certification Manual* §§ 2313, 2314; 78 ADM–13.

■ The policies and procedures in fact adopted by the defendants violate federal law and regulations.[1] New York City IM 4/78 and New York State ADM–1 provide that a public assistance applicant whose application is deferred or accepted may be eligible for expedited food stamp certification only if he has "no income, no food, and no resources." Under IM 4/78 § A(2)(c), moreover, the applicant must be unable to manage until public assistance eligibility is determined. These requirements imposed by defendants are not found in federal regulations; federal regulations require eligi-

---

1. This court need not decide plaintiffs' equal protection claims, in light of this statutory violation.

bility to be determined by whether the applicant is calculated to be at the zero purchase income level, as well as by the other federal eligibility criteria for food stamps. Thus, the defendants have added eligibility criteria in excess of those authorized by federal law. Accordingly, these additional restrictions violated federal law and regulations.

Section A(2)(a) of IM 4/78 instructs that applicants for food stamps are to be rejected if at the time of the interview the applicant is rejected for public assistance. The effect of basing food stamp eligibility upon public assistance eligibility is that food stamp applicants may be rejected on public assistance criteria rather than federal food stamp criteria. Applicants eligible for food stamps may be rejected solely because of their ineligibility for public assistance. This rejection on the basis of nonfederal criteria is illegal. In light of the illegality of the criteria used, the fact that a rejected public assistance applicant may reapply for emergency food stamps at a Food Stamp Center is irrelevant.

Section A(2)(c)(2)(a–c) of IM 4/78 suggests that workers should search for a collateral contact in determining eligibility for expedited food stamps. While workers were given the option of basing decision on an applicant's representations alone, IM 4/78 did not instruct workers that collateral contacts were not required and should not delay certification. This conflicts with the holding in *Aiken v. Obledo*, 442 F.Supp. 628 (E.D.Cal.1977), that collateral contact is not required and may not delay the expedited certification procedure. A collateral contact requirement would also violate the federal instructions which were revised to comply with the *Aiken* holding. *See* 43 Fed. Reg. 31412 (July 21, 1978).

Finally, IM 4/78 § A(2)(c) and 78 ADM–13 § IV(2) instruct workers to decide eligibility based on "the weight of the evidence" as to the truthfulness of the applicant's statements. This standard seemingly conflicts with the "Prudent Person Concept" set forth in New York Food Stamp Certification Manual § 2011. State defendants

argue that "[t]he only difference between the two standards is that 'prudent person' is a legal term of art which is slowly and painfully drummed into the heads of first year law students by their Torts professors; while 'weight of the evidence' is a term much more readily understandable to the clerical workers who process food stamp applications." Without commenting on the education of first year law students, this court is of the opinion that the State's suggestion that "weight of the evidence" is the equivalent of, or more comprehensible than, the "Prudent Person Concept" is without support. Under this court's pendant jurisdiction pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), this court decides that the use of the "weight of the evidence" instruction conflicted with then-existing State law.

In response to plaintiffs' arguments, defendants advance several arguments. First, it is argued, in allowing public assistance applicants to apply for emergency food stamps through the public assistance process, the defendants were providing an additional procedure not required by federal law. The suggestion is made that public assistance applicants were eligible to apply for emergency food stamps at Food Stamp Centers during the pendency of their public assistance applications. On the undisputed facts, there is no indication that public assistance applicants were routinely referred to apply elsewhere for emergency food stamps. Accordingly, defendants' argument must fail. Second, it is argued, the City has maintained public assistance and food stamps as two separate and distinct programs and does not wish to convert its income maintenance centers into food stamp centers. This court appreciates the nature of this distinction, but the argument is of no relevance in light of the fact that applicants were being granted and denied emergency food stamps by the City in a process which applied nonfederal criteria.

■ Defendants argue that plaintiffs' motion for partial summary judgment should be denied as there is a genuine issue of material fact concerning whether the named plaintiffs were injured by any of the

challenged eligibility criteria. In the absence of injury, this court would not be presented with a case or controversy under Article III. *See Massachusetts v. Mellon,* 262 U.S. 447, 67 L.Ed. 1078 (1923). Thus, defendants maintain that the genuine issue of material fact is whether the named plaintiffs were in fact eligible for expedited certification and whether they were denied certification because of the use of illegal criteria.

■ This court finds that there is no genuine issue of material fact which would preclude partial summary judgment. At least two of the named plaintiffs suffered injuries from defendants' policies and procedures, even under defendants' version of the facts. Plaintiffs Saunders and Stokes were injured by the requirement of IM 4/78 that allows expedited food stamp applications to be rejected based on public assistance eligibility criteria. Defendants' affidavits indicate that Saunders was rejected for public assistance because of his ownership of a car. Defendants' affidavits also indicate that plaintiffs Stokes and Saunders were rejected for public assistance because they voluntarily terminated their employment. Defendants' affidavits do not dispute the fact that these two plaintiffs were otherwise eligible for zero purchase food stamps according to federal eligibility criteria. Accordingly, there is no genuine issue of material fact since even under defendants' version of the facts these two plaintiffs were denied the opportunity to participate in the food stamp program for a significant period of time as a result of the illegal use of public assistance eligibility criteria.

■ Defendants also argue that partial summary judgment is precluded by a genuine issue of material fact concerning whether the plaintiff class was injured by defendants' policies and practices. Defendants note that more public assistance applicants received expedited certification during the month of June, 1978, when the "Permanent Plan" was in effect, than in the month of February, 1978, when public assistance applicants received emergency food stamps at Food Stamp Centers whose procedures are unchallenged in this suit. Defendants' argument does not preclude summary judgment: their statistics do not refute the possibility of injury to particular class members by the illegal criteria. There are no genuine issues of material fact concerning liability of defendants for using nonfederal criteria.

*Relief*

■ As the "Permanent Plan" is no longer in effect, and as plaintiffs do not challenge the defendants' present compliance with new federal regulations, the only meaningful relief to be afforded is the retroactive award of food stamp benefits which were wrongfully denied by defendants. As discussed above, the Eleventh Amendment bars retroactive awards against a State, but not against a city or county. *See Edelman v. Jordan, supra,* 415 U.S. at 667 n.12, 94 S.Ct. at 1358 n.12. Accordingly, it is well within the power of this court to order the City defendants to arrange for payment of retroactive food stamp benefits to those wrongfully denied benefits under the "Permanent Plan." Moreover, the State as well may be included in an order of retroactive payments. Under the doctrine of *Edelman v. Jordan,* a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. In the case at hand, the State may seek reimbursement from the United States Department of Agriculture for any retroactive benefits paid to members of the plaintiff class. In fact, 7 C.F.R. § 271.1(q)(1) (1978) provides that retroactive benefits are to be given by the State in cases of administrative errors such as erroneous denials: "[d]enials include, but are not limited to, instances where a State agency has erroneously denied the application. . . ." *Id.* Given this specific provision for payment of retroactive benefits, there is no reason to doubt that the State will be reimbursed for retroactive food stamp benefits. Moreover, it was established in *Bermudez v. United States Department of Agriculture,* 160 U.S.App.D.C. 150, 156, 490 F.2d 718, 723 (D.C.Cir.), *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973), that, as between states

and the federal government, "the federal government is liable for retroactive food stamp benefits." In light of *Bermudez*, the state may claim reimbursement from the U.S.D.A. for retroactive benefits paid to food stamp recipients. In short, both the City and the State defendants may be ordered to arrange for the award of retroactive benefits. *See Tyson v. Norton, supra*, 390 F.Supp. at 575 (ordering notification of households of their right to apply for a forward adjustment of benefits).

While retroactive award of food stamp benefits is appropriate in this case, the parties have not suggested to the court what form of retroactive relief is appropriate. As has been noted by other courts, certain types of retroactive relief such as issuing extra food stamps may be unsound public policy, opening up avenues for fraud. *See, e. g., Stewart v. Butz*, 356 F.Supp. 1345, 1352 (W.D.Ky.1973), *aff'd*, 491 F.2d 165 (6th Cir. 1974). Moreover, the administrative procedure by which claims for retroactive awards will be considered has not been discussed by the parties. Finally, plans must be made for notification of members of the plaintiff class that may seek retroactive food stamp benefits. All of these matters present complicated issues which require further discussion by the parties. While plaintiffs just recently submitted a proposed order for relief, neither plaintiffs nor defendants have submitted accompanying memoranda regarding the merits of the proposed order.

For the above stated reasons, this court denies the motion of the City defendants for summary judgment and grants plaintiffs' motion for partial summary judgment to the extent that the court finds in this opinion that certain of defendants' policies and procedures violated federal law and regulations or state law with respect to the "Permanent Plan." The parties are ordered to submit memoranda regarding plaintiffs' proposed order for relief within thirty days of the issuance of this opinion.