515 A.2d 646

Linda Mooney, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued June 9, 1986, before President Judge CRUMLISH, JR., Judges BARRY and ROGERS, sitting as a panel of three.

*David J. Graban,* with him, *Karen Lazorishak, Fruit, Dill, Goodwin & Scholl,* for petitioner.

*Jeffrey P. Schmoyer,* Assistant Counsel, with him, *John Kane,* General Counsel, for respondent.

OPINION BY JUDGE BARRY, September 29, 1986:

On December 12, 1983, this court decided the case of *Van Dusen v. Department of Public Welfare (Mooney I),* 79 Pa. Commonwealth Ct. 60, 468 A.2d 540 (1983)[1] in favor of the petitioner, Linda Mooney. Ms. Mooney, diagnosed as mildly mentally retarded, had been denied food stamp benefits because she lived in a group living arrangement which, under state regulations, renders a food stamp claimant automatically ineligible for benefits unless he is a blind or disabled social security recipient. We determined that these regulations were inconsistent with the federal regulations on which they were based and that the intent of the federal legislation was to create an exception for blind or disabled social security recipients from the rule excluding otherwise eligible claimants from receiving food stamp benefits because they were residents of institutions. We found that inasmuch as Ms. Mooney purchased and prepared her own food she was not a resident of an institution; therefore, the Department's decision to exclude her from benefits because she did not qualify under the exceptions to institution-resident status was improper. We held that Ms. Mooney's living circumstances fell within the definition of a "household" under 7 U.S.C. §2012(i)(1), which reads:

'Household' means (1) an individual who lives alone or who, while living with others, cus-

---

[1] In that case, the cases of Dennis Van Dusen and petitioner here, Linda Mooney, were consolidated for the purposes of appeal.

tomarily purchases food and prepares meals for home consumption separate and apart from the others, or (2) a group of individuals who live together and customarily purchase food and prepare meals together for home consumption. . . . In no event shall any individual or group of individuals constitute a household if they reside in an institution or boarding house, or else live with others and pay compensation to the others for meals. For the purposes of this subsection . . . disabled or blind recipients of benefits under Title II or Title XVI of the Social Security Act who are residents in a public or private nonprofit group living arrangement that serves no more than sixteen residents and is certified by the appropriate State agency or agencies under regulations issued under section 1616(e) of the Social Security Act . . . shall not be considered residents of institutions and shall be considered individual households.

*Id.*

Ms. Mooney has filed the present claim challenging another Mercer County Assistance Office (CAO) determination that she received an overissuance of food stamp coupons in the amount of $466.00 from February 1, 1984 to September 30, 1984 because she lived in a group living arrangement during that period and did not qualify for food stamps under Pennsylvania Welfare Regulations, the identical regulations which we held invalid as applied in *Mooney I*. It appears that in October of 1983, Ms. Mooney changed residences from Todd Avenue to East State Street.[2] She reported her new liv-

---

[2] The full addresses are: 99 Todd Avenue, Apartment C-4, Hermitage, Pa. and 252 East State Street, Sharon, Pa. Both residences are administered by Mercer County Association for the Retarded.

ing situation as that of an independent living arrangement rather than a group living arrangement. The Department approved her application for food stamps but during a subsequent re-determination procedure determined that the East State Street residence was not an "independent living arrangement" but a "group living arrangement" which the Department treats as an "institution". Ms. Mooney was determined ineligible and ordered to return any benefits she allegedly improperly received during that period. Under federal and state regulations, an overissuance is established in households which received larger allotments than they were intended to receive.[3]

Ms. Mooney argues that the regulations as interpreted by the hearing examiner are inconsistent with federal standards, and are, therefore, invalid. She contends that her living arrangements are virtually identical to those in *Mooney I,* and as such, the labels of either a "group living arrangement" or "community living arrangement" are administrative labels and constitute, in reality, "a distinction without a difference".

Ms. Mooney also argues that the state regulations which acted to deny her benefits were in conflict with the federal statute pertaining to the treatment of developmentally disabled individuals, Act of October 31, 1963, P.L. 88-164, *as amended,* 42 U.S.C. §§6000-6083, and the Mental Health/Mental Retardation regulations. The federal statute and state regulations dictate the requirements that mentally retarded individuals be provided with goal plans called Individual Habilitation Plans which promote self-sufficiency for developmentally disabled persons to the fullest extent possible.[4] Ms. Mooney's representative further urges

---

[3] 7 C.F.R. §273.18(c) and 55 Pa. Code §561.4(3)(88).

[4] State regulations implementing this statute are found at 55 Pa. Code §6400.124.

that we find the Department in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(b), a federal non-discrimination statute favoring the handicapped; therefore, counsel fees, as provided for under that Act should be awarded.

The purpose of the Food Stamp Program is to promote the general welfare and safeguard the health and well-being of the nation's population by raising the level of nutrition among low-income households.[5] This program is administered by the states using federal eligibility standards. 7 U.S.C. §2014(b). In the provisions of the federal eligibility standards which define eligible "households," residents of institutions are deemed ineligible with certain exceptions. This section of the standards, codified in federal regulations, provides as follows:

> *Residents of institutions.* Individuals shall be considered residents of an institution when the institution provides them with the majority of their meals (over 50% of three meals daily) as part of the institution's normal services and the institution has not been authorized to accept coupons. Residents of institutions are not eligible for participation in the program with the following exceptions:
>
> (1) Residents of federally subsidized housing for the elderly, built under either section 202 of the Housing Act of 1959 or section 235 of the National Housing Act.
>
> (2) Narcotic addicts or alcoholics who, for the purpose of regular participation in a drug or alcohol treatment and rehabilitation program, reside at a facility or treatment center.
>
> (3) Disabled or blind individuals who are residents of group living arrangements (as de-

---

[5] 7 U.S.C. §2011.

fined in §271.2) and who receive benefits under Title II or Title XVI of the Social Security Act. (4) Women or women with their children temporarily residing in a shelter for battered women and children as defined in §271.2. Such persons temporarily residing in shelters for battered women and children shall be considered individual household units for the purposes of applying for and participating in the Program.

7 C.F.R. §273.1(e). The states are required to use the same eligibility requirements in administering their programs as set forth in federal law or the state regulations are invalid. *Harrington v. Blum,* 483 F. Supp. 1015 (S.D.N.Y. 1979), *aff'd,* 639 F.2d 768 (2d Cir. 1980). The Pennsylvania eligibility standards are set forth in the Pennsylvania Code, and the hearing examiner relied on Sections 505.2, 515.2, 515.3(b)(2) and (3) of title 55 thereof when he upheld the determination by the CAO that Ms. Mooney received an over-issuance of food stamps.

Section 505.2 of the Pennsylvania Welfare Regulations defines a group living arrangement as

a public or private nonprofit residential setting that serves no more than 16 residents that is certified by the appropriate agency or agencies of the State under regulations issued under section 1616(e) of the Social Security Act. *To be eligible for food stamp benefits, a resident of such a group living arrangement must be blind or disabled and receiving benefits under Title II or Title XVI of the Social Security Act.*

*Id.* (emphasis added). Section 515.2, providing definitions, reads:

*Resident of an institution*—A person who *receives* the majority of his meals as a part of the normal services of an institution, provided the

institution has not been authorized by FNS to accept coupons.

*Id.* (emphasis added). Section 515.3(b), meanwhile, reads as follows:

(b) *Prohibition against residency in boarding houses and institutions*

. . . .

(2) *Institutions*. Residents of institutions are not eligible to participate in the program except as provided in paragraph (3). Reference should be made to §515.2 (relating to definitions) for the definition of a resident of an institution.

(3) *Exemptions from the institution prohibition.* Households which are exempt from the requirements prohibiting residents of institutions to participate in the program will be as follows:

. . . .

(iii) Disabled or blind individuals who are residents of group living arrangements as defined in §505.2 (relating to definitions) and who receive benefits under Title II or Title XVI of the Social Security Act.

*Id.*

Our scope of review when considering the propriety of an administrative agency's interpretation of its own regulations is limited to determining whether the proffered interpretation is erroneous or inconsistent with the regulation and the statute under which it was promulgated. *Hamilton v. Department of Public Welfare,* 91 Pa. Commonwealth Ct. 521, 498 A.2d 11 (1985). Section 515.2, which defines "residents of institutions," is clearly consistent with the federal regulations which states that persons shall be considered residents of institutions when the institution provides them with the majority of their meals (over 50% of

three meals daily). 7 C.F.R. §273.1(e). However, Section 505.2 and 515.3(b)(iii) are not consistent with the federal eligibility standards as both automatically deny food stamp benefits to those living in group living arrangements who are neither blind nor disabled without regard to whether the claimant is receiving prepared meals. In Ms. Mooney's case, if she meets all other eligibility requirements and is purchasing and preparing her own meals, she is a "household" under federal law because she is not an individual who is being provided with the majority of her meals as part of the institution's normal services; however, state regulations act to deny her benefits merely because she lives in a group living arrangement. Although the hearing examiner does not provide an explanation for relying on the aforementioned sections of the Pennsylvania Welfare Regulations, the Department maintains that because this facility serves prepared meals (over 50% of three meals daily) to its residents, all individuals residing in such a facility are considered residents of an institution. This position is inconsistent with the federal eligibility standards under 7 C.F.R. §273.1(e). In sum, state regulations which automatically characterize an individual as a resident of an institution without considering whether he actually receives the majority of his meals from the facility in which he resides are inconsistent with the federal regulations defining residents of institutions and a decision to disqualify a claimant on this basis is in contravention of the federal statute defining "household."

Ms. Mooney's representative asks that we grant counsel fees, authorized at 29 U.S.C. §794a, for violation of Section 504 of the Rehabilitation Act. We must, however, reject that request, as we find Section 504 inapplicable. That section provides:

No otherwise qualified handicapped individual in the United States, as defined in Section 706(7)

[29 U.S.C. §706(7)], shall, *solely by reason of his handicap,* be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

*Id.* (emphasis added). We find no evidence to suggest that the Department denied Ms. Mooney benefits because she was mentally retarded. It was her living arrangement, not her developmental limitations, which the hearing examiner considered in his decision. This is illustrated further by the fact that he granted her benefits when he believed she resided in a "Community Living Arrangement" regardless of her handicap. We do not believe that Ms. Mooney has been discriminated against *solely by reason of her handicap,* thus 29 U.S.C. §794a, authorizing counsel fees to the aggrieved party, does not apply.[6]

---

[6] §794a. Remedies and attorneys' fees

(a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)), shall be available, with respect to any complaint under section 501 of this Act, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. §§2000d *et seq.]* shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or

Inasmuch as we have concluded that the State regulations involved here are invalid we do not reach the question of whether these regulations frustrate the purpose of the federal statute governing developmentally disabled persons and the state MH/MR regulations.

We reverse and remand with direction to the Director to remand to the hearing examiner to determine Ms. Mooney's eligibility benefits based upon a correct implementation of the federal eligibility standards in a manner consistent with this opinion.

### ORDER

Now, September 29, 1986, the order of the Director of the Office of Hearings and Appeals dated April 10, 1985, which affirmed the decision of the hearing examiner that food stamps were over-issued to petitioner in the amount of $466.00, is reversed. The case is remanded to the Director for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

Federal provider of such assistance under section 504 of this Act [29 U.S.C. §794].

(b) In any action or proceeding to enforce or charge a violation of a provision of this title [29 U.S.C. §§790 *et seq.*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

*Id.*