Patricia COTTON, Plaintiff–Appellee,

v.

Agnes M. MANSOUR, Defendant–Appellant.

No. 86–1644.

United States Court of Appeals, Sixth Circuit.

Dec. 1, 1988.

---

Louis J. Caruso, Sol. Gen., Thomas Case (argued), Christopher D. Dobyns, Asst. Atty. Gen., Lansing, Mich., for defendant-appellant.

Terri L. Stangl (argued), Legal Services of Eastern Michigan, Saginaw, Mich., for plaintiff-appellee.

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1983.

Before ENGEL, Chief Judge,* and BOGGS, Circuit Judge, and HOLSCHUH, District Judge.**

ENGEL, Chief Judge.

The issue in this appeal is whether the eleventh amendment bars a suit in federal court by a food stamp recipient against the Director of the Michigan Department of Social Services (MDSS) to recover food stamp benefits allegedly wrongfully withheld by defendant in violation of federal law. Normally the food stamp program is fully funded by the federal government except that administrative costs are shared between the federal and state governments. It is by no means certain, however, that liability for the food stamp benefits withheld can be passed on to the federal government and it is to be noted that the United States is not a party to this suit. The program itself is administered by the state.

In May 1984, in response to a Department of Agriculture regulation, 7 C.F.R. § 273.21(j)(1)(vii)(B), MDSS changed its method of counting supplemental Aid to Families with Dependent Children (AFDC) payments in calculating eligibility for food stamps. It began counting retroactive non-recurring lump sum payments, in this case reimbursement for the previous month's rent, as income rather than resources, thus reducing affected persons' food stamp benefits. In August 1984, the Deputy of the Food and Nutrition Service branch of the United States Department of Agriculture issued a clarifying memorandum to all the states indicating that these types of payments were to be considered resources rather than income and should not reduce food stamp eligibility. Michigan brought its policy into compliance, but the change did not take effect until December 1984.

Patricia Cotton brought a class action suit in federal court seeking a declaratory judgment that Michigan's policy had been in violation of federal law. She also sought

** The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

restoration of the withheld food stamps for the period from March until December, and notice to the affected class of the state administrative remedies available to obtain restoration of similarly withheld food stamps.

The district court, 634 F.Supp. 1094, found that any claims for prospective relief were moot as Michigan was now in compliance with federal regulations. The court held, however, that Michigan had been in violation of federal law from March until December and ordered Mansour to arrange for restoration of the food stamps to Cotton and to provide notice to other class members. The district court held that the eleventh amendment was not a bar to suit in federal court for restoration of fully federally funded benefits, finding that the state had not shown that the administrative costs involved in the restoration would be effectively burdensome. The court found that notice to the class was allowed under *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), because it was "ancillary to the grant of some other appropriate relief that can be 'noticed,'" in this case the retroactive award of food stamps paid by the federal government. We reverse.

### I.

Plaintiff, Patricia Cotton, was a recipient of both AFDC and food stamps. For Cotton to receive an AFDC grant for shelter, MDSS required that her landlord complete a shelter verification form. In early 1984 plaintiff moved to a new apartment and gave a shelter verification form to her new landlord. The landlord failed to return the shelter verification form to MDSS until March of 1984. Plaintiff's February 1984 AFDC grant did not include an AFDC allowance for shelter.

Eligibility for individual benefits and benefit levels of food stamps are based upon household income. In determining what constitutes a household's income a state agency must take into consideration numerous exclusions and deductions from income. *See* 7 U.S.C. § 2014(d), (e); 7 C.F.R. § 273.8. Effective May 1, 1984, MDSS began counting all supplemental or corrective public assistance payments as income.

AFDC benefits are included within the definition of public assistance. 7 C.F.R. § 271.2. Prior to May 1, 1984, MDSS had not counted such supplemental payments as income in calculating individual food stamp allotments. The change in MDSS policy was in response to a change in federal regulations relating to treatment of additional or corrective payments in calculating food stamp eligibility.[1] MDSS was required to be in compliance with this new regulation by May 1, 1984.

Plaintiff received a supplemental public assistance payment in May of 1984 to correct the February underpayment. Under the procedure then in effect, MDSS included the supplemental income in its calculation of food stamp allotments which resulted in a reduction of plaintiff's July food stamp award.

In August of 1984, MDSS received a policy memorandum from the Deputy Administrator for Family Nutrition Programs, United States Department of Agriculture, regarding the treatment of supplemental payments in calculating food stamp allotments and eligibility. This policy memorandum clarified the interaction between 7 C.F.R. § 273.21(j)(1)(vii)(B) and 7 C.F.R. § 273.9(c)(8), the latter requiring that cer-

---

1. In recognition of the change in AFDC, the Department has amended the option for treating AFDC grants prospectively by requiring that the State agency ensure that corrective payments are counted as income. The change is intended to ensure that corrective payments will not go uncounted. The State agency may count the corrective payments either prospectively with the basic grant (as income in the issuance month) or retrospectively (as income in the budget month). For example, in a two

month system, the State agency may count the corrective payment made in June either prospectively toward the issuance in June, or retrospectively toward the issuance in August. The change will ensure that food stamp allotments reflect household income, yet will allow State agencies flexibility for accounting for corrective payments.
48 Fed.Reg. 54955 (1983). *See also* 7 C.F.R. § 273.21(j)(1)(viii)(B)(1).

tain payments be counted as resources rather than household income.

Effective December 1, 1984, MDSS changed its policy and began treating such corrective payments as nonrecurring lump sum payments which are not included in "income" upon which food stamp eligibility and allotments are based.

On February 15, 1985, plaintiff initiated a class action under 42 U.S.C. § 1983 against defendant, Mansour, personally and in her official capacity as Director of MDSS. Plaintiff sought four forms of relief: (1) injunctive relief; (2) a declaratory judgment that the defendant's method of calculating food stamp benefits between May 1, 1984, and December 1, 1984, had been unlawful; (3) that defendant be ordered to provide plaintiff with the food stamps wrongfully withheld; (4) that the defendant be ordered to issue notices of underpayment and also be ordered to provide notice of the procedure through which such claimants' eligibility could be determined.

Plaintiff and defendant filed cross motions for summary judgment. The trial court held that defendant Mansour was not personally liable for the actions of MDSS. Plaintiff has not challenged this decision on appeal. The trial court held that food stamps had been unlawfully withheld from Cotton during the period March 1, 1984 to December 1, 1984 and that notice be given to other members of the class. MDSS thereafter filed notice of this appeal. For the reasons which follow, we hold that plaintiff's claims for relief are barred by the eleventh amendment.

## II.

The eleventh amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of a Foreign State." The Supreme Court has long held that the amendment also applies to suits against a state by one of its own citizens. *See Edelman v.* *Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

The Supreme Court has also clearly determined that relief under the *Ex Parte Young* exception [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] to the eleventh amendment bar must be prospective in nature.

Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the type awarded in *Ex Parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. See *Pennhurst [State School & Hospital v. Halderman], supra,* 465 U.S. [89] at 102 [104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984)]. See also *Milliken v. Bradley,* 433 U.S. 267 [97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)]. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

*Green,* 474 U.S. at 68, 106 S.Ct. at 426.

In the words of the district court, "[P]laintiff requests a declaratory judgment holding that defendant's prior policy of calculation was unlawful, that defendant be ordered to provide plaintiff wrongfully-withheld food stamps and that defendant be ordered to issue notice of underpayment and notice of administrative mechanisms through which claimant's eligibility will be calculated."

### 1. *Injunctive Relief*

■ The district court concluded, "To the extent plaintiff seeks ... any prospective injunctive relief as to defendant's food stamp allotment budget policies that portion of plaintiff's claim[s] should be dismissed as moot." We agree with the district court's conclusion that any request for prospective injunctive relief was moot. MDSS had clearly changed its policy of calculation months before plaintiff had filed suit and MDSS had even personally informed plaintiff's counsel of this change

in MDSS policy. There was simply no on-going violation by MDSS to enjoin.

## 2. Food Stamps

■ The district court also stated, "Plaintiff's claim for retroactive relief is different," and, "Plaintiff requests retroactive relief in the form of unissued food stamps and that defendant be required to notify class members whose stamps were wrongfully withheld." In our view the district court's reasoning with respect to these issues, while possessing some appeal, is nonetheless flawed.

In reaching its conclusion that a retroactive award of food stamps in this case would not violate the eleventh amendment the court stated, "[I]t is obvious that states cannot claim relief from a retroactive award of food stamps." It further stated:

Plaintiff argues that administrative costs associated with notice does not bar plaintiff from receiving retroactive food stamps because these costs are distin-

guishable from the food stamps and the Eleventh Amendment is not involved. Clearly, the administrative costs are distinguishable from the food stamps. [Cases cited by the district court in support of its interpretation are found in footnote 2]. *See also* 7 U.S.C. § 2020(e)(ii); 7 C.F.R. § 273.17(b). Moreover, the costs of arranging the retroactive payments does not involve the Eleventh Amendment.

Although the United States Supreme Court has not reached the issue directly, other Supreme Court opinions dealing with the general area and lower court opinions dealing with the issue directly, indicate that the costs of arranging retroactive payments, which are themselves paid by the federal government, do not involve the Eleventh Amendment.

Various lower court opinions have held that administrative costs caused by a decision are not within the Eleventh Amendment's immunity for state defendants.[2]

---

**2.** Lower court opinions upon which the district court based its interpretation were: *Stewart v. Butz,* 356 F.Supp. 1345 (W.D.Ky.1973), *aff'd,* 491 F.2d 165 (6th Cir.1974), *Carter v. Butz,* 479 F.2d 1084 (3d Cir.), *cert. denied,* 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973), *Harrington v. Blum,* 483 F.Supp. 1015 (S.D.N.Y.1979), *aff'd,* 639 F.2d 768 (2d Cir.1980), *Collins v. Marshall,* 507 F.Supp. 83 (W.D.Mo.) *reversed on other grounds, sub nom., Collins v. Donovan,* 661 F.2d 705 (8th Cir.1981). All of the cases listed in support of the district court's conclusion are easily distinguished from the case at hand.

*Stewart v. Butz* and *Carter v. Butz* are different from this case in several respects. First, both *Stewart* and *Carter* involved situations where the Secretary of Agriculture was a named defendant. In Cotton's case the only defendant is Mansour. In *Stewart* the district court was confronted with a situation where Stewart had been denied the right to purchase food stamps for a month because she allegedly purchased food stamps exceeding her quota for the previous month. It was determined that the state made an administrative error. The court determined that the federal government was to pay for the stamps wrongfully withheld. The court rejected the federal government's attempt to categorize the retroactive award of stamps as an administrative expense, noting among other things the eleventh amendment problems with such a retroactive award. The district court dismissed the complaint against the Commonwealth of Kentucky and awarded relief against the federal government in the form of reducing

the price of food stamp coupons in future months until Stewart had been fully compensated.

In our opinion in *Stewart v. Butz,* 491 F.2d 165 (6th Cir.1974) (per curiam) the only issue on appeal was whether the Secretary of Agriculture or the Commonwealth of Kentucky had to pay for the stamps as there was no dispute that Stewart had been wrongfully denied those stamps. We "affirmed [the judgment of the district court] insofar as it adjudged liability against the Secretary of Agriculture." *Id.* at 166. If anything, *Stewart* supports defendant's claim to eleventh amendment immunity.

Again, in *Carter,* "[t]he only issue [was], as between the federal and state governments, which party was responsible for the remedy implied from conceded statutory eligibility [to purchase food stamps]." *Id.* at 1087. As between the state and federal defendants, the Third Circuit held that the federal government should pay for the stamps because:
(1) there was no *additional* expense to the federal government because if there had been no error, the federal government would have dispersed these benefits anyway;
(2) the federal government had appropriated money for the program: the states had not appropriated money and had not conditioned their participation upon waiver of sovereign immunity; and
(3) that the district court's forward adjustment award was consistent with the nutritional purpose of the program.
*Harrington,* which held that a state could be held liable for a retroactive award of food

We agree that administrative costs are distinguishable from the stamps themselves. We cannot, however, agree with the district court's conclusion under Supreme Court and lower court precedent that, "the costs of arranging retroactive payments which themselves are paid by the federal government, do not involve the Eleventh Amendment." From the remainder of the district court's opinion, it is apparent that the district court held that if the stamps themselves were paid by the federal government, the state could not claim eleventh amendment protection solely related to its administrative burden. We find this interpretation inconsistent with Supreme Court precedent.

As previously stated, the *Ex Parte Young* exception is narrow and forward in its focus. Here the relief sought is solely retroactive and would impose direct administrative expenses on the State Treasury.

> [T]he *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and to hold state officials responsible to "the supreme authority of the United States." *Young, supra,* [209 U.S.] at 160 [28 S.Ct. at 454]. As JUSTICE BRENNAN has observed, *"Ex Parte Young* was the culmination of efforts by this Court to harmonize the principles of the Eleventh Amendment with the effective supremacy of rights and powers secured elsewhere in the Constitution." *Perez v. Ledesma,* 401 U.S. 82, 106 [91 S.Ct. 674, 687, 27 L.Ed.2d 701] (1970)....
>
> The Court also has recognized, however, that the need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the States. This is the significance of *Edelman v. Jordan, supra.* We recognized that the prospective relief authorized by *Young* "has permitted the Civil War Amendments to the Constitution to serve as a sword, rather than merely as a shield, for those whom they were designed to protect." 415 U.S., at 664 [94 S.Ct. at 1356]. *But we declined to ex-*

> *tend the fiction of* Young *to encompass retrospective relief, for to do so would effectively eliminate the constitutional immunity of the States. Accordingly, we conclude that although the difference between permissible and impermissible relief* "will not in many instances be that between day and night." 415 U.S. at 667 [94 S.Ct. at 1357], an award of retroactive relief necessarily " 'fall[s] afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force.' " *Id.,* at 665 [94 S.Ct. at 1357] (quoting *Rothstein v. Wyman,* 467 F.2d 226, 237 (CA2 1972) (McGowan, J., sitting by designation), cert. denied, 411 U.S. 921 [93 S.Ct. 1552, 36 L.Ed.2d 315] (1973)). In sum, *Edelman*'s distinction between prospective relief and retroactive relief fulfills the underlying purpose of *Ex Parte Young* while at the same time preserving to an important degree the constitutional immunity of the States.

*Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 105–06, 104 S.Ct. 900, 910–11, 79 L.Ed.2d 67 (1984) (emphasis added).

A good illustration of why the district court in this case was in error is found in *Colbeth v. Wilson,* 554 F.Supp. 539 (D.Vt. 1982), *aff'd sub nom., Colbeth v. O'Rourke,* 707 F.2d 57 (2d Cir.1983). In *Colbeth,* Colbeth on behalf of herself and others similarly situated sought declaratory and injunctive relief against David Wilson in his official capacity as Commissioner of the Vermont Department of Social Welfare (DSW). Colbeth claimed that Wilson's "interpretation and implementation of the Vermont Food Stamp Manual violate[d] her rights under the Food Stamp Act of 1964, as amended, 7 U.S.C. §§ 2011–2029 (1976 & Supp. IV 1980) its accompanying regulations, and the Fourteenth Amendment to the United States Constitution." *Id.* at 540. Colbeth filed an application for food stamp benefits with the DSW. Later that month, DSW issued notice of its decision

---

stamps was effectively reversed by the Supreme Court opinion in *Green. See Green,* 474 U.S. at 71, 106 S.Ct. at 427. Finally, *Collins,* reversed

by the Eighth Circuit, involved a different statutory scheme and the relief granted was prospective in nature.

denying the application on the ground that plaintiff's income was in excess of DSW standards. Factored into the computation of plaintiff's income for purposes of determining her eligibility for food stamp benefits was a figure representing her monthly AFDC grant. In calculating plaintiff's income DSW included the full amount of plaintiff's AFDC grant without excluding therefrom any amount representing the child care and transportation expenses by which the AFDC grant had been increased. Plaintiff argued that "the employment expense deduction mandated by the AFDC statute, which serve to increase an AFDC grant to compensate recipients for such expenses, are 'reimbursements' and therefore should be excluded from consideration as income for purposes of determining food stamp eligibility." *Id.* at 542–43. Wilson conceded that plaintiff would have been eligible for a food stamp allotment if the amount by which Colbeth's AFDC grant was augmented had been considered as an exclusion from income for purposes of the food stamp program. *Id.* at 542.

After Colbeth filed her complaint, Congress amended the Food Stamp Act such that household income excluded " 'reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household: *Provided that no portion of benefits provided under Title IV–A of the Social Security Act, to the extent it is attributable to an adjustment for work-related or child care expenses shall be considered such reimbursement....*' 7 U.S.C.A. § 2014(d)(5) (West Supp.1982) (emphasis added). Title IV–A of the Social Security Act is the Aid to Families with Dependent Children (AFDC) section of the Act which appears at 42 U.S.C.A. §§ 601–615 (West 1974 & Supp.1982)." *Colbeth*, at 542.

In light of the above amendment, Colbeth withdrew her claim for prospective relief. Plaintiff requested that the district court recalculate her eligibility for, and make restitution of, benefits due and owing the class prior to the effective date of the amendment or in the alternative that the

court direct the defendant to issue to class members *Quern*-type notice.[3]

The district court concluded,

[P]laintiff's request for recalculation and restitution of food stamp benefits falls on the *Edelman* rather than the *Ex Parte Young* side of the Eleventh Amendment law.... Defendant's projections as to the magnitude of administrative expenses associated with the grant of retroactive relief indicate that such an award may demonstrably and significantly interfere with the State's budgetary process and thus its fiscal autonomy.

Finally, we are not persuaded that the equities ultimately lie in favor of a retroactive award. Presumably, the State has a definable allocation of monies to be used in the payment of public aid benefits. An award of retroactive benefits that results in liability of the State for administrative expenses will reduce the availability of funds for the continuing obligations of public assistance programs.... The purpose of the food stamp program is to enable families to obtain a nutritionally adequate diet. As a practical matter, that goal may not be fulfilled retroactively. Therefore, an award of relief for past errors would be compensatory rather than remedial in nature. Policy considerations strongly suggest that the distribution of limited resources to those presently in need of food stamp assistance better serves the purposes of the Act than an award to persons whose circumstances may have been improved in this interim period.

For the same reasons the court in *Colbeth* found the plaintiff's claim barred by the eleventh amendment we also find that Cotton's claim for a retroactive award of food stamps is barred.

## 3. *Notice Relief*

■ With respect to plaintiff's claim for notice relief, to the extent that it is not otherwise moot by our rulings here today, we conclude that it is in all events indistin-

**3.** This type of notice is discussed in greater detail in section 3 *infra.*

guishable from *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), and hence barred by the eleventh amendment. In granting notice relief, the district court concluded that *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), was not limited to situations where notice was ancillary to some form of prospective relief.

We have previously held that the retroactive award of food stamps in this case was barred by the eleventh amendment. There is therefore no other appropriate prospective relief to which notice relief could be ancillary. The district court misinterpreted the type of notice relief allowed under *Quern v. Jordan* and *Green v. Mansour.* In *Quern,* the Supreme Court upheld a court order requiring the state defendants to send notice to class members advising them that there was a state administrative procedure available if they desired to have the state determine whether they were eligible for past benefits. The Court upheld the notice, finding it was more properly viewed as ancillary to the prospective relief already ordered by the Court, the prospective relief being the permanent injunction against state officials continuing to violate federal law. The state's administration of the federal-state program for Aid to the Aged, Blind or Disabled violated federal regulations then in effect.

In *Green,* the Supreme Court carefully reviewed its previous opinion in *Quern*[4] and held that *Quern*-type notice was only available if ancillary to some form of *prospective* relief.

The notice in *Quern v. Jordan* did nothing other than inform a diverse and partially victorious class concerning the extent of the judgment in its favor, cf. Fed.Rule Civ.Proc. 23(d)(2) and that the federal courts could do no more for them. There was no suggestion that the notice itself would bind state officials in any way, or that such notice would be routinely available as a form of relief in other cases. *Because "notice relief" is not the type of remedy designed to prevent ongoing violations of federal law, the Eleventh Amendment limitation on the Art. III power of federal courts prevents them from ordering it as an independent form of relief.*

Measured by the standards of *Quern,* however, *a request for a limited notice order will escape the Eleventh Amendment bar if the notice is ancillary to the grant of some other appropriate relief that can be "noticed." Because there is no continuing violation of federal law to enjoin in this case, an injunction is not available. Therefore, notice cannot be justified as a mere case-management device that is ancillary to a judgment awarding valid prospective relief.*

*Green,* 474 U.S. at 71, 106 S.Ct. at 427 (emphasis added).

We find this case indistinguishable from *Green* and conclude that the "notice relief"

4. In *Green,* two separate class actions were filed against MDSS claiming that MDSS's policies and regulations violated 42 U.S.C. § 1983 by inflating respective class members' earned income and thereby causing a reduction or termination of AFDC benefits contrary to the applicable federal law. Class one challenged MDSS's policy of prohibiting the deduction of child care costs in the calculation of earned income. Class two challenged the MDSS's policy of automatically including stepparent's income in the calculation of earned income. The earned income figure is crucial in that it is used for determining eligibility for and the amount of food stamps. While the claims of both classes were pending, Congress amended the relevant portions of the AFDC program requiring participating states to: (1) deduct child care expenses up to a specified amount from earned income; and (2) include stepparent income in the calculation of earned income. Neither class claimed that the policy MDSS was using at the time of trial violated federal law. Both classes nevertheless claimed that they were entitled to have the district court award them both with "notice relief" and a declaration that MDSS's prior conduct violated federal law.

The district court granted MDSS's motions to dismiss, holding that in each case changes in federal law rendered moot the claims for prospective relief and that the remaining claims for declaratory and notice relief related solely to past violations of federal law. The district court determined such retrospective relief was barred by the eleventh amendment. We affirmed the district court's decisions upon consolidated appeal in *Banas v. Dempsey,* 742 F.2d 277 (6th Cir.1984). The Supreme Court, in turn, affirmed our decision in its decision in *Green,* 474 U.S. 64, 106 S.Ct. 423 (1985).

requested is barred by the eleventh amendment.

### 4. Declaratory Judgment

■ As in *Green*, plaintiffs have also requested declaratory relief. In *Green* the Supreme Court noted that "notice relief" could be available if plaintiffs were entitled to a declaratory judgment that the defendant violated federal law in the past. The court in *Green* then went on to examine the circumstances under which an issuance of a declaratory judgment would be appropriate.

The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and we have held that under this Act declaratory relief may be available even though an injunction is not. *Steffel v. Thompson*, 415 U.S. 452, 462 [94 S.Ct. 1209, 1217, 39 L.Ed.2d 505] (1974). But we have also held that the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 [73 S.Ct. 236, 239, 97 L.Ed. 291] (1952). The propriety of issuing a declaratory judgment may depend upon equitable considerations, see *Samuels v. Mackell*, 401 U.S. 66, 73 [91 S.Ct. 764, 768, 27 L.Ed.2d 688] (1971), and is also "informed by the teachings and experience concerning the functions and extent of federal judicial power." *Wycoff, supra*, [344 U.S.] at 243 [73 S.Ct. at 240] cf. *Younger v. Harris*, 401 U.S. 37, 44–45 [91 S.Ct. 746, 750–51, 27 L.Ed.2d 669] (1971)....

We think that these cases demonstrate the impropriety of the issuance of a declaratory judgment in this case.[5] There

is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction. Nor can there be any threat of state officials violating the repealed law in the future. Cf. *Steffel v. Thompson, supra*, 415 U.S. at 454, 94 S.Ct., at 1218. *There is a dispute about the lawfulness of respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of petitioners. We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the later kinds of relief being of course prohibited by the Eleventh Amendment.* The teachings of *Huffman, Samuels,* and *Wycoff,* are that a declaratory judgment is not available when the result would be a partial "end run" around our decision in *Edelman v. Jordan*, 415 U.S. 651 [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974).

*Green*, 474 U.S. at 72–73, 106 S.Ct. at 427–28 (emphasis added). We find that plaintiff's request for declaratory judgment is indistinguishable from the request rejected by the Supreme Court in *Green*. We therefore reject plaintiff's request for a declaratory judgment that defendant's past method of calculating food stamp eligibility between May 1, 1984 and December 1, 1984 was unlawful.

---

5. See *Great Lakes Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) (declaratory judgment not available to obtain a determination of the constitutionality of a state tax even though the relevant federal statute prohibited federal courts only from issuing injunctions against such taxes); *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (declaratory judgment not available to declare a

state criminal statute unconstitutional where it would have much the same effect as an injunction prohibiting enforcement of the statute); *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (declaratory judgment inappropriate for determining whether the plaintiff's business was interstate commerce and therefore potentially immune from state regulation).

## CONCLUSION

Because the relief ordered by the district court against the defendant was retroactive, would require expenditures from the State treasury, contained no prospective relief to which a *Quern*-type notice could be ancillary and was inappropriate for declaratory relief, we hold that the relief requested by plaintiff and granted by the district court is barred by the eleventh amendment. Accordingly, we REVERSE and REMAND with instructions that the district court dismiss the plaintiff's case.